JOHN T. CROWE, ADM'R, *vs.* FRANCIS H. PETERS, Appellant.

1. *Equity—Action to set aside transfer for fraud—Allegations—Fiduciary relation—Undue influence.*—Where a transfer is unreasonable, and is brought about by trick or misrepresentation, a court of equity will set it aside.
In such suit allegations that defendant was a relative of the transferrer, and living with him, and that the latter was old and infirm, are not sufficient statements to make out a case, even by way of inference, of confidential relations between the parties. Nor will the additional statement, that a different disposition had been made of the same property, previously, by will, when the testator was of sound mind, establish a case of undue influence.

2. *Practice, civil—Intimidation of witness—Action of court compelling party to leave court for.*—The action of a court in compelling one of the parties to a suit, then on trial, to leave the court room, on the ground that a witness is intimidated by his looks and gestures, is error.

3. *Witness, sheriff not disqualified as, when.*—Neither a sheriff nor his substitute can be disqualified as a witness by reason of his having summoned the jury before whom he testifies.

4. *Evidence—Opinion of non-experts on the question of sanity.*—Opinions of witnesses, although not experts, on the question of sanity, are allowed, when accompanied by some of the facts on which they are based, to go to the jury.

5. *Practice, civil—Counts at law and in equity included in one suit—Judgment in case of—Rule.*—Where counts at law and in equity are included in the same petition, they require separate trials and separate judgments.

6. *Practice, civil—Equity—Decree—Allegata and probata—Statute, construction of.*—When the evidence on which the case is tried and the decree is founded differs materially from that stated in the petition the cause will, under the statute, (Wagn. Stat. 1037, ¿ 23) be reversed.

### *Appeal from Franklin Circuit Court.*

J. C. *Kiskaddon*, for Appellant, cited: 4 Pet. 297 ; 6 Pet. 716 ; 12 Pet. 178 ; 2 Greenl. Ev., § 369, and notes ; 2 Kent Com. 240 ; Castle vs. Bader, 23 Cal. 75 ; Butler vs. Viele, 44 Barb. 166 ; Funkhouser vs. How, 17 Mo. 225 ; Van Deusen vs. Rowbly, 8 N. Y. [4 Seld.] 358 ; Lowe vs. Williamson, 1 Green Ch. 82 ; Grant vs. Thompson, 4 Conn. 203 ; Dewitt vs. Barley, 9 N. Y. [5 Seld.] 371 ; Dallam vs. Renshaw, 26 Mo. 533 ; Rumbolds vs. Parr, 51 Mo. 592 ; Henderson vs. Henderson, 55 Mo. 534 ; Snow vs. Holstead, 1 Cal. 357 ; Sto. Eq. Jur., § 228 ; 1 Fonbl. Eq. B. 1, ch. 2, § 3 ; Bean vs. Valle, 2 Mo. 126 ; Harrison vs. Town, 17 Mo. 237 ; Coles vs. Nickell, 42 Mo. 169 ; Wagn. Stat. 1042, §§ 20–26 ; Mooney vs. Kennett, 19 Mo. 551 ; Wagn. Stat. 1041, § 15 ; Finney vs. State, 9 Mo.

624 ; House vs. Powell, 45 Mo. 381 ; Pickering vs. M. V. U. T. Co., 47 Mo. 457 ; Hadley vs. Latimer, 3 Yerg. 537 ; Gardner vs. Gardner, 22 Wend. 526 ; Miller vs. Miller, 3 Serg. & R. 267 ; Lowe vs. Williamson, 1 Green ch. 82 ; Hunter vs. Atkins, 3 Myl. & K. 113, 132 ; Doggett vs. Lane, 12 Mo. 215.

*J. W. Booth*, for Respondent, cited : Weeke vs. Lenden, 54 Mo. 129 ; 1 Greenl. Ev. [11 ed.] 605, n. 1 ; Bishp. Eq. Prin., §§ 230–233 ; Wagn. Stat. 1012, § 2 ; 1041, § 15 ; 1051, § 2 ; Franciscus vs. Bridges, 18 Mo. 208 ; Henderson vs. Dickey, 50 Mo. 161 ; 1 Sto. Eq. Jur. [10 ed.] 221, § 218 ; Weil vs. Kume, 49 Mo. 158 ; Hamilton vs. Hamilton, 59 Mo. 232 ; Hickey vs. Drake, 47 Mo. 371 ; State vs. Carlisle, 57 Mo. 102.

NAPTON, Judge, delivered the opinion of the court.

This case presents a series of questions, chiefly relating to points of practice, rules of pleading and forms of proceeding, which may be considered and determined without regard to the main question involved, and therefore needs no preliminary statement.

1. Adopting the historical order of exceptions noted in the record, the first point was raised upon the opening of the testimony by the plaintiff, that the second count in the petition stated no cause of action, and therefore no evidence should be permitted under that count.

The second count stated, in substance, that Erb, the deceased, was the owner of a certain promissory note, dated on the 5th of May, 1871, for the sum of $700, executed by Bleckman and Horn to said Erb ; "that said Erb was very old, in feeble health, and weak in body and mind, by reason of which he was unable to attend to his ordinary business affairs ; that defendant by marriage was related to said Erb, by all of which there were confidential relations existing between said Erb and defendant ; that a short time previous to the death of said Erb, said defendant induced said Erb to come and live with him, under promise that he would furnish him, said Erb, a room free of charge ; that said Erb did accept said invitation, and lived with said defendant in

one of his houses on his farm ; that while so living with him, and while the aforesaid confidential relations existed, and while said Erb was old and infirm, in feeble health, etc., the defendant, exerting over said Erb an undue influence, induced said Erb to transfer said note to him, the defendant, under the pretext of said defendant's keeping said Erb for and during the balance of his life time, thereby, by his cunning and craft, and by said undue influence, overcoming said Erb, and causing him to make said contract, contrary to the disposition that said Erb had already made, when not under any undue influence, and while in sound body and mind, as evidenced by his last will and testament, duly probated ; that by reason of all this, said contract is void, and should not be upheld."

This count further avers that defendant has collected this note, and asks that the assignment be declared void, and then proceeds to offer to deduct from the principal and interest of the note such sum of money as the defendant's services to Erb may be reasonably worth, and prays for general relief.

That this count is exceedingly defective is quite apparent. The only two facts stated as constituting confidential relations between Erb and the defendant are ; first, the age and infirmities, physical and mental, of said Erb, and, second, that defendant was his relative by marriage. From these two facts it is averred, as an inference, that confidential relations between these parties existed. But it is obvious that neither the one or the other, or both, lead to any such inference. The pleader then proceeds to state that the defendant invited Erb to occupy a room in a house on his place, and that Erb accepted the offer, and that "whilst the aforesaid confidential relations existed," defendant by undue influence, and cunning and craft, induced Erb to transfer this note, under pretext of keeping Erb during the remainder of his life, "contrary to the disposition that said Erb had previously made by his last will and testament," which had been done when Erb was sound in mind and not under any undue influence.

The fact that Erb had made a will and disposed of this property differently from the disposition of it now proposed to be set aside, is, of itself, no ground for impeaching the transaction. If

by undue influence, growing out of such confidential relations as the law recognizes, or otherwise, the transfer was the result of a substitution of the will of defendant for the will of Erb, brought about by trick, or misrepresentation, or fraud, and was an unreasonable one, under the circumstances a court of equity would set it aside. This was the case which was subsequently tried, but it is not the case stated in this petition.

2. The second point made here is upon the demurrer to the evidence on both counts, as insufficient to support a verdict under either. In regard to the first count, which was an ordinary action at law, the evidence was for the jury, and it could hardly be claimed that there was not sufficient evidence to authorize the court to submit the issue. It was not certainly very conclusive, but it was of a character which might warrant a jury in finding against the defendant. It was proved that the money claimed in this court was in the possession of the defendant about two and a half months before his death ; that it was missing when the administrator went to defendant's house to ascertain what property of Erb was there, and that the chest in which the money was deposited had been opened. There was also evidence tending to show that defendant stated he had searched for the money, but could not find it. This was a matter of which sufficient proof was offered to authorize the court to submit the issue to a jury, and therefore, there was no ground for a demurrer, and the court properly overruled it.

In regard to the second count, there was evidence to show that Erb was about eighty years old ; that for ten years and more before his death, he had attended to no particular business ; that he was eccentric in his habits, had never been married, and had lived in the neighborhood at various places, all the time however occupying a room or house by himself, and preparing his own food.

About the month of March, 1871, this old man, who was a German (as indeed all the parties and witnesses were), went to occupy a house of defendant's, near defendant's dwelling house, within the same inclosure, but 150 yards distant from it. Several witnesses state that he was then in a feeble state of body and mind ; that his hearing was bad, and his eyesight impaired, and

that, in their opinion, his mental faculties were not at all such as they had been. A German doctor, however, who attended Erb in his last illness, gave it as his opinion, that Erb's mind was not at all impaired, except that his memory of recent events was, (as was usual in cases of extreme old age) not so good as it had been, but that, in transacting business, he was as shrewd as he ever had been, never having been a business man. It does not appear that after Erb went to defendant, he reposed any special confidence in the defendant to transact his business, if he had any to transact. Erb remained in the house, on defendant's farm, till he died, in the middle of April, 1872, at the age of eighty years and some months over. He had made a will before he went to defendant's, by which he had divided his property equally between the wife of defendant, who was his niece, and one Doer, who was his nephew, and who was the principal witness for the plaintiff in this case.

The assignment of the note against Bleckman & Co. for seven hundred dollars, dated in 1870, was made in February or January, 1871, and Erb died in April. A witness was called in to the assignment. What the condition of Erb was at this time does not clearly appear.

What has been stated, however, is sufficient to show that there was no ground for asking a non-suit, because of the entire want of evidence.

3. Upon the trial a young woman, who was a niece of the defendant, was, upon examination as a witness for plaintiff, and, in the course of her examination, was asked some questions in relation to the condition she found Erb in, when she visited defendant, about three weeks before Erb died; and her answers not being satisfactory to the plaintiff's counsel, it was suggested to the court that she was intimidated by the looks and gestures of defendant, and therefore the court was requested to order the defendant to leave the room until her examination was ended. This request was granted, and the defendant was ordered to leave the room—which he did. Exceptions were taken to this order, and this is one of the points insisted on here.

The defendant had a right to be present at the examination of the witnesses against him. The court undoubtedly has ample power to protect witnesses, without compelling a party to leave the court room. Besides the power of fine, it is easy to direct the position of the witness and of the defendant to be so placed, that the looks and gestures of the one cannot come within the observation of the other. The precise modes which may be adopted by a court to prevent intimidation of witnesses, or any other improper conduct of a party during a trial, is a matter within the discretion of the court presiding over the trial; but this discretion should be so exercised, if possible, as not to prevent that consultation between the counsel and his client, which is unnecessary to an official cross-examination. The defendant could not very well suggest explanations to be elicited by cross-examination, unless allowed to be present at the examination in chief.

4. The plaintiff in this case, having been at the time of the trial sheriff of the county, an *elisor* was agreed on by the parties to summon a jury, but it afterwards appeared that this *elisor* was one of the witnesses for the plaintiff; and this was made one of the grounds for a new trial, and supported by affidavit of the counsel, that this fact was not known when the consent was given to his appointment. There is no force in this objection. The sheriff could not be disqualified as a witness because he summoned the jury, nor could his substitute.

5. The point was made in the progress of this case that opinions of witnesses, who are not experts in regard to the sanity of a party, are inadmissible, and various authorities have been cited in support of that view. The court, however, at an early day (Baldwin vs. The State, 12 Mo. 234), adopted the views of the Supreme Court of North Carolina in Clary vs. Clary (2 N. C. 78), which allowed such opinions when accompanied with some of the facts on which they were based to go to the jury; and although there are very respectable authorities to the contrary, this decision has been understood to settle the practice in this State.

6. In this case there were two verdicts and two judgments, the first judgment being on the verdict found on the first count, which may be termed one at common law, and the second a judgment

on decree in equity, based on the verdict of the jury, but in form disregarding it and recited to have been entered in conformity to the finding of the court.    It is now urged that there should have been but one judgment, on the ground that sec. 15, p. 1041 (Wagn. Stat.), requires that "the judgment on each separate finding shall await the trial of all the issues."

It was observed in Mooney vs. Kennett (19 Mo. 554), that where a petition contains several causes of action, there must be a finding on each count, and these verdicts "will all be blended in one judgment." But this observation must be understood as indicating the time when the final judgment in the case was allowed. It seems to be settled now, in the construction of this section of the practice act, that where a count at law and a count in equity are included in the same petition, they require separate trials and separate judgments. (Jones vs. Moore, 42 Mo. 420; Henderson vs. Dickey, 50 Mo. 166.) This conclusion is indeed inevitable if such joinder is allowed.

7. The count in equity was submitted to a jury at the same time at which the count in law was. There were two verdicts, one on the first count, stating the damages given, and the one on the second count, merely finding for plaintiff. The court adopted the verdict practically, but entered up a decree, not referring to it, reciting that the facts were found in accordance with the allegations of the petition.

The instructions given, which were unquestionably the law, and very favorably expounded on the defendant's side, show that the court was trying a case where the allegations sufficiently set forth a misplaced confidence, growing out of the weakness of one party, and the employment of the defendant as his agent, to transact whatever business matters the former may have had; and the evidence tended to show an abuse of that confidence, not by inducing the old man to alter his will, but by getting from him an immediate compensation for services to be performed in future, altogether larger than the services were reasonably worth in the then reasonable calculations of the continuance of the old man's life. This was not the case stated in the petition.

In accordance therefore with section 23 of art. 8, of the practice act, we are constrained to say that the judgment on decree must be reversed, and the cause remanded for a new trial. The judgment on the first count will not be disturbed.

The other judges concur, except Judge Wagner, who is absent.