## MOORE v. MOORE.

1. **Competency of Non-expert Testimony as to Sanity.** A person who has had an adequate opportunity of observing and judging the mental condition of another, although not an expert, is a competent witness to prove his sanity. The weight to be given to his testimony must depend upon a consideration of all the circumstances under which his opinion was formed.

**2. A Deed of Gift from a Parent to his Child** will not be set aside, on the ground that it makes an unequal distribution of property among his children, when the parent had capacity enough to understand the value of the gift, and the condition and situation of those who had claims upon his bounty.

*Error to Miller Circuit Court.*—HON. GEORGE W. MILLER, Judge.

*J. A. Spurlock and James P. Ross* for plaintiff in error.

1. Persons who testify that they are well acquainted with a person, his habits, conversations and state of mind, may testify as to his sanity or insanity, though not experts.

2. In the case at bar, a father was making a settlement in favor of his daughter, who was unprovided for, and for his own support, and, of course, for that of his crippled wife; in such a case, fraud, undue influence, &c., must be strictly proved and not presumed. 1 Story Eq., Sec. 694, note A; *Rowland v. Sullivan,* 4 Dessaus. 518.

3. A man has a right to make whatever disposition of his property he chooses, however absurd or unjust, and it will be sustained if capacity, formal execution and volition appear. *Seguine v. Seguine,* 35 How. (N. Y.) 336.

4. Defect of memory, unless it be total, or appertain to things very essential, is not sufficient to create incompetency; nor is old age, however extreme. One has a right by fair persuasion or argument to induce another to make a will in his favor. 4 Clinton, N. Y. Dig., pp. 3455, 3456; *Whitenach v. Striker,* 1 Greene's Ch. 9; 1 Story Eq., Secs. 238, 235; *Watson v. Donnelly,* 28 Barb. 653; 2 Starkie on Ev., pp. 1275-6-7; 2 Phillips on Ev., p. 449.

*A. W. Anthony* for defendant in error.

The deed worked an injury to the aged wife of the grantor, depriving her of any means of support. It also

works an injury to all the other childen, and ought not to stand.  *Turner v. Turner*, 44 Mo. 535; *Cadwallader v. West*, 48 Mo. 483.  The burden of proof is on the plaintiff in error.  She must furnish the evidence that no fraud or undue influence was used.  *Garvin's Admr. v. Williams*, 50 Mo. 206; *Street v. Goss*, 62 Mo. 226.

NORTON, J.—Melon Moore, in 1872, executed a deed, the effect of which was to transfer to his daughter, Melinda Moore, all his estate, which consisted of notes, amounting to about $3,000, in the hands of one Harrison.  The consideration of this deed, as expressed on its face, was the sum of five dollars, natural love and affection, and that said Melinda should maintain and support him during his life.  Said Melinda, after the death of her father, which occurred in 1873, demanded of said Harrison the notes in his possession, and upon his refusal to deliver them, instituted her suit in the Morgan county circuit court, to recover the possession of them.  Harrison answered, admitting that he held the notes, but alleged that he had been notified by Simms, the administrator of the estate of Melon Moore not to give the said notes up to the said Melinda Moore, and claimed the notes as assets belonging to the said estate.  He further alleged that he had received a similar notice from Stanford Moore, a son of said Melon, and prayed the court for an order making said Simms and the heirs of said Melon Moore parties, and requiring them to interplead and thus settle the conflicting claims.  The prayer was granted, and an order made for that purpose, whereupon the said Simms appeared and filed his interplea, claiming said notes, and alleging that Melon Moore, at the time of the execution of said deed, was an old and imbecile man, that confidential relations existed between him and the said Melinda, and that said deed had been procured by fraud, importunity and undue influence of the said Melinda.  Stanford Moore also filed a similar answer, except that he did not set up claims to the notes.

, The case seems to have been treated by the parties and the trial court as a proceeding in equity to set aside said deed. Issues were framed and submitted to a jury, and, on their finding, a decree was entered canceling the deed, and declaring that the administrator was entitled to the notes, and judgment was accordingly rendered. From this decree and judgment the defendant prosecutes her writ of error.

Without considering the objections made to the action of the court in authorizing the administrator to become a party and file an interplea, and when so made, treating him as party plaintiff and holding the affirmative, we proceed to the consideration of the errors alleged in the rejection of evidence, and that the judgment is not supported by the evidence. In passing on the validity of the deed, two questions were necessarily involved, viz: Did Melon Moore have sufficient mental capacity to make it? If so, was it his act uninfluenced by any abuse of special confidence reposed in the said Melinda, or by fraud or undue influence exerted by her? In support of the affirmative of the proposition in the first question, defendant offered to show by several witnesses, who knew the said Moore, and had often seen and conversed with him, that he was of sound mind, and among others Elizabeth Moore, the daughter of the grantor, who, after stating that she knew the habits and state of mind of her father, and had often heard him speak of business affairs, was asked to state if he talked sensibly or otherwise, and the condition of his mind in 1871 and 1872. This question the court, over the objection of the defendant, refused to allow the witnesses to answer.

Under the ruling of this court in the case of *Baldwin v. The State*, 12 Mo. 223, this evidence ought to have been received and the court erred in rejecting it. Before allowing a witness to testify in regard to the condition of the mind of another, it should appear that he had an adequate opportunity of observing and judging of his capacity

The weight to be given such evidence must depend upon a consideration of all the circumstances under which the opinion was formed, but that such evidence is receivable is established by the above authority. *Baldwin v. State* was followed and approved in the case of *Crowe, Admr. v. Peters*, 63 Mo. 434; and such opinions, when accompanied with some of the facts on which they are based, are allowed to go to the jury. "Was Melon Moore so aged and infirm in body and mind as to be imbecile," was one of the issues submitted to the jury, and the evidence rejected by the court was directly applicable to it.

It is also insisted as error that there was no evidence to sustain the finding of the jury on the following issue submitted, viz: Was the deed procured by fraudulent or undue influence by Melinda Moore? The evidence in the case shows that Melon Moore, at the time the deed was executed, was about eighty years old; that he had nine children; that Melinda was the second one—an old maid—had always lived with her father and mother; that the latter had been a cripple and disabled for some years; that Melinda was their house keeper, and attended faithfully to the wants of both father and mother, till they died in 1873.

The deed in question was executed in 1872, while Melon Moore was living at the house of his daughter, Hannah Chism. Mrs. Russell, Lucinda and Hannah Chism, three daughters of said Melon, all testified in the case, and said that they never heard a word of importunity, or a request on the part of Melinda that the father should make the deed, that he frequently talked about it to them, and told the other children that he intended to give Melinda what he had left, that none of them objected except Stanford; that Melon Moore, on the day the deed was executed, went to Versailles with his daughter, Mrs. Chism, and that the deed was made by him without solicitation from her or Melinda in the office of Spurlock; that on his return he delivered the deed to Melinda. We have failed to per-

ceive from the evidence that Melon Moore reposed any confidence in Melinda more than was common to his other children, or that she had more influence over him than any other of them, or that at any time she exerted such influence, if she possessed it.

It is, however, said that from the face of the instrument, the gain and advantage it secured to Melinda, the age and mental condition of the father, the presumption arises that it was fraudulently obtained by an exercise of undue influence. When confidential relations are shown to exist between grantor and grantee, and the conveyance bears marks of great inequality and great advantage to the grantee and without an adequate consideration, such a presumption might arise, but when the deed is just in itself and its consequences, it will not be avoided on the ground of undue influence. *Turner v. Turner*, 44 Mo. 535 ; *Cruger v. Douglas*, 4 Edw. Chy. 433, 525, 532; *Whelan v. Whelan*, 3 Cow. 537. It appears from the deed that the grantor was moved to execute from considerations of love and affection, and that he should be taken care of and supported during his life, and from the fact that he had given to his other children as much as Melinda was to get under the deed. This latter statement was attempted to be overthrown by the evidence of Stanford Moore, the only one of the nine children who appeared to contest the validity of the deed. He testified that his father only gave him a suit of clothes and a colt, and he did not think he had given to his other children as much as $2,500 apiece. How much he did give them does not appear, but it does appear that three of the daughters who testified were satisfied, and that the other children were not complaining, and that the administrator stood before the court representing an estate without creditors, the evidence clearly proving that the old man owed nothing at the time of his death. Defendant, however, did offer to show that all the rest of the children were in good circumstances, and well provided for, which the court refused to allow, and on

what principle the refusal was based we are at a loss to perceive, since the plaintiff was permitted to controvert the truth of the statement contained in the deed, that the grantor had given as much to his other children as the grantee would get.

But even if this had appeared and nothing more, if old man Moore had mind and memory enough to comprehend and understand the value of the property, and the condition and situation of those who had claims on his bounty, he had the right to make the deed in question, and it is not sufficient to impeach it, that it is not in all respects as might have been expected. It is not enough to show that a parent has made an unequal distribution of his property. A man has a right to dispose of his property by deed or will as he pleases.

Some incompetency of mind showing an incapacity at the time of executing it, or some imposition practiced on the donor or testator, some confidence abused, or undue influence exerted, should be shown to authorize a court to exercise the power of setting aside wills or deeds properly executed. *Rowland v. Sullivan*, 4 Dessau. Eq. 516.

While the evidence shows that Melon Moore was about eighty years old when he executed the deed, all the witnesses concur in stating that he was physically vigorous for a man of his age, walking erect, going about alone on long trips on horseback. The only facts developed by the evidence, tending to show failure of his mind, are that in going through the woods to the house of a person about one mile distant from where he lived, he got lost or confused and came in at the back door instead of the front; and that, on another occasion, he saw a neighbor in the morning going to town, shook hands with him, and inquired as to his health and the health of his family, and when he returned in the evening, bringing to Moore a pint of alcohol as he had been by him requested to do, Moore again shook hands with him, and inquired again as to his health.

State v. Court of Appeals.

Neither one or both of these circumstances would be sufficient to invalidate a deed, which we are not prepared to say, from the standpoint furnished us by the evidence, is unjust in its provisions.  If the deed is to be viewed as made upon the consideration of past services rendered, and future services to be rendered, the evidence shows that they were faithfully performed, for according to it, the mother had been a cripple for some years, and Melinda, according to the evidence of the three sisters, waited upon the father and mother day and night till they died.

If it is to be regarded as made on the consideration of love and affection, when it is considered that Melon Moore esteemed that all his other children had been provided for, and that they did not in fact, as defendant offered to prove, need his bounty, and that his daughter Melinda had devoted her life to him, and was unprovided for, the provision made for her in the deed would seem not only wise but just.

The judgment will be reversed and cause remanded, to be disposed of according to the views herein expressed, in which the other judges concur.

REVERSED.