SHARP, *Appellant*, v. THE KANSAS CITY CABLE RAILWAY COMPANY.

Division One, February 6, 1893.

1. **Evidence:** NON-PROFESSIONAL WITNESS: INSANITY. A non-professional witness may give his opinion as to the mental condition of another in connection with a recital of the facts upon which he bases his conclusion.

2. ———: ———. The value of such opinion depends wholly upon the opportunity the witness has had to observe the conduct of the person whose mind is in question and upon the incidents actually observed. These circumstances should be stated to render the opinion competent and to enable the jury to estimate its value.

3. ———: ———. A non-professional witness may state the facts and incidents observed by him tending to show the mental condition of another without giving his opinion thereon, leaving it to the jury to draw the conclusion, with or without the aid of experts.

Sharp v. The Kansas City Cable Ry. Co.

4. **Practice:** ADMISSION OF EVIDENCE AT FIRST REJECTED. Error committed in excluding competent evidence is cured by its admission upon the witness being recalled.

5. ———: INSTRUCTIONS: ADOPTION OF COURT'S THEORY OF CASE. Plaintiff will not be heard on appeal to complain that the trial court compelled him to adopt its theory of the case by suggesting that if he would prepare and ask certain instructions they would be given, since it was plaintiff's duty to ask instructions presenting his theory of the case and if they were refused to save his exceptions.

6. ———: NEGLIGENCE: RAILROAD: BURDEN OF PROOF. In an action for personal injuries alleged to have been caused by insufficient and defective grip-irons and brakes on a cable railway car, plaintiff cannot complain that he was compelled to carry the burden of proof upon the trial, where the court instructed at his request that "the burden of proof is upon the defendant to establish to the reasonable satisfaction of the jury that it could not discover any insufficiency of the grip-shanks or rail-brakes, if any there was, by the exercise of the utmost practicable skill and human foresight."

7. ———: ———: RAILROAD: INSTRUCTIONS. In such action an instruction asked by plaintiff, basing his right to recover upon the defective construction of the grip-irons and brakes, should have been given, and the error in refusing it was not cured by one given by the court of its own motion which places his right to recover upon want of repair.

8. ———: ———: ———: ———. An instruction which excuses the defendant, if the liability of the brake-shank to break, or the insufficiency of the brake was either not known to the defendant or was such as could not have been known by the utmost practicable care, is erroneous in the use of *or* for *and*, as the mere want of knowledge of the insufficiency of the grip or brake would not relieve the defendant.

9. ———: ———: ———: PRIMA FACIE CASE. In such case, proof that the brakes were insufficient to hold the car makes a *prima facie* case for the plaintiff.

10. **Cable Railway:** DUTY AS TO GRIPS AND BRAKES: CONDITION OF WEATHER. A cable railway company, in supplying grips and brakes for its cars and in keeping them in repair, is bound to anticipate and take into consideration all such weather and conditions of the track as may be reasonably expected in the climate where operated.

11. **Practice:** VERDICT: INSTRUCTION. It is not error to instruct a jury that it is improper and illegal for them to arrive at a verdict by first agreeing that each juror should set down the amount, if any, he was in favor of awarding the plaintiff, divide the aggregate by twelve and that the result thus obtained should be their verdict.

12. ———: ———. A verdict made by virtue of and pursuant to such an agreement amounts to misconduct on the part of the jury and ought not to stand.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*W. J. Hollis* for appellant.

(1) The court erred in compelling plaintiff to carry the burden of proof through the trial. *Lemon v. Chanslor,* 68 Mo. 340; *Hipsley v. Railroad,* 88 Mo. 348; *Coudy v. Railroad,* 85 Mo. 85; *Crane v. Railroad,* 87 Mo. 588; *Dougherty v. Railroad,* 97 Mo. 647. "Plaintiff need only allege in his petition what he is bound to prove to make out his *prima facie* case." *Crane v. Railroad,* 87 Mo. 588; Thompson on Carriers of Passengers, 547. "The obligation of a carrier to carry safely arises out of a public duty and not from any contract to do so." Story on Bailments [9 Ed.] sec. 590, note 1. "The promise to carry safely is implied from the duty; not the duty from the promise." Shearman & Redfield on Negligence [3 Ed.] sec. 296. The fact that the plaintiff pleaded acts of negligence made no difference. This court say in the *Dougherty Case,* "the allegations were immaterial, unnecessary and harmless." *Dougherty v. Railroad,* 97 Mo. 654. (2) The court erred in its ruling on the evidence refusing to permit plaintiff to prove facts upon which witnesses based their opinion of plaintiff's mind. *Crowe v. Peters,* 63 Mo. 429; *Moore v. Moore,* 67 Mo. 192. (3) The court erred in giving and refusing instructions and compelling plaintiff to ask instructions contrary to his theory or go to the jury in a manner without any. *Stokes v. Saltenstall,* 13 Peters, 184. Thompson on Carriers of Passengers, pp. 163–183. *Hageman v.*

*Railroad*, N. Y. Ct. App. 1885. Plaintiff's instructions 1, 2 and 6 properly declared the law and should have been given. *Crane v. Railroad*, 87 Mo. 588; *Coudy v. Railroad*, 85 Mo. p. 85; *Hipsley v. Railroad*, 88 Mo. 348; *Dougherty v. Railroad*, 97 Mo. 647. Thompson on Carriers of Passengers, pp. 188, 193, 194, 195, 547-9; *Frick v. Potter*, 17 Ill. 406; *Thorne v. Stage Co.*, 6 Cal. 232; *Carmentan v. Gulf Co.*, 5 La. 703; *Weed v. Railroad*, 19 Wend. 534; *Allender v. Railroad*, 37 Iowa, 264; *Railroad v. Pillsbury*, 5 A. S. R. sec. 6; 483, A. S. R. 734, and note. (4) The court erred in giving instructions 2, 6, 7, 8 and 10 asked by defendant. Authorities above cited. (5) The court erred in giving instructions 1, 2, 3, 4 and 4 1-2. Authorities above cited. (6) The motion for new trial should have been sustained.

*Johnson & Lucas* for respondent.

(1) The general allegations of plaintiff's petition were limited and restricted by the specific ones, and; having elected to pursue a certain course, he could not to the prejudice of defendant be permitted to change it. *Price v. Railroad*, 72 Mo. 414; *Ely v. Railroad*, 77 Mo. 34; *Sidekum v. Railroad*, 93 Mo. 400, instruction on page 406. (2) The changing of its ruling by the court on the question of non-expert witnesses giving their reasons for their conclusions, and its remark thereon, were in no way prejudicial to plaintiff. No exception was taken to the remark of the court at the time. (3) Plaintiff cannot be heard to complain that the court compelled him to adopt its theory of the case. (4) Instructions 1 and 2 asked by plaintiff were properly refused because they were expressed in involved and obscure language and so far as any parts

were applicable to the case were supplied by instructions 3 and 4 given by the court of its own motion. (5) Instruction 2 was to prevent what is a common practice amongst jurors in cases where unliquidated damages are sued for. It has been held that it is not a proper method of arriving at a verdict, and yet it cannot be shown that such method was adopted by affidavits of jurors. Hence the giving of an instruction forbidding it is the only (if there is any) corrective. *Sawyer v. Railroad*, 37 Mo. 240. (6) The fifth instruction means that if the failure of the brakes to stop the train was caused by the icy and slippery condition of the track, and not by any defect or insufficiency in the brakes, then the defendant is not liable. It was correct and was properly given. (7) No vice has been pointed out by appellant in instructions 1, 2, 3, and 4, given by the court of its own motion, and none of the authorities cited controvert the principles laid down.

BLACK, P. J.—This was a suit to recover damages for injuries sustained by the plaintiff in February, 1888, while a passenger on defendant's road. The appeal is prosecuted by the plaintiff from a verdict and judgment in favor of the defendant.

The defendant owns and operates a cable street railroad from Union avenue in Kansas City eastward. The tracks at Union avenue rest upon trestle work some thirty feet above the ground. From there east to Jefferson street, a distance of about a quarter of a mile, there is a steep up grade. Plaintiff took passage at Union avenue on a train composed of a grip car and a coach. When the train was within one hundred feet of Jefferson street, the grip broke at the shank, and the train ran back down the hill. The evidence shows that there were two brakes on the grip-car, one

an automatic brake to be applied to the car wheels, and the other a rail-brake which applied blocks of wood to the track-rail, both operated by the gripman. The coach had two brakes also, operated by the conductor and a hill brakeman. The grip-shank runs in a slotted rail and is subject to constant friction, and has chafing irons attached to keep it from wearing away. There is no dispute as to the above facts.

The plaintiff's evidence tends to show that the chafing irons had been removed from the grips on all the cars a short time before this accident because the cold weather caused the slot to close to some extent. The gripman says he applied his brakes as soon as the grip-shank broke, but they did not hold the cars; that he knows the blocks on the rail-brake were worn from the fact that the lever went over too far. Some of the plaintiff's witnesses say the train ran down the hill at the rate of thirty to fifty miles per hour. The plaintiff did not testify in his own behalf, and it does not clearly appear where he left the train or whether he jumped off or was thrown off. We infer he jumped off before it reached the bottom of the incline. He received severe injuries. A Mr. Carr, a witness for plaintiff, says he was in the grip-car, that something broke and he stepped off, that he followed the train down the hill and on his way met a number of passengers and two of the employes. He thinks these employes belonged to this train and that one was the gripman and the other the hill brakeman. He says he met these employes more than a hundred feet from the place where the cars stopped.

The evidence for the defendant is to the effect that the grips and brakes used by the defendant were the best that had then been devised; that the grips were made of soft steel; that freezing weather has a tendency to make steel brittle and liable to break, and

there is no known remedy; that the grips and brakes were inspected daily; that the brakes on these cars were all in good condition at the time of and were found to be in good condition just after the accident. The hill brakeman testified that all the brakes were applied as soon as the grip broke; that it was freezing and thawing, and raining and sleeting, making the track slippery; that the train slid down the hill gradually at a rate not exceeding ten miles per hour; that he and the conductor notified the passengers in the coach several times to remain in their seats and they would be safe, and that he remained at his post until the car stopped. The evidence of the gripman is that he remained at his proper place, and it seems the conductor was on the car when it reached the bottom of the incline.

1. The trial court allowed non-professional witnesses to give their opinions that plaintiff's mind was seriously and injuriously affected by the accident, but at first refused to allow them to recite the facts upon which they based their opinions. At a later stage of the trial these witnesses were recalled and were permitted to state the facts.

A non-professional witness may give his opinion as to the mental condition of another in connection with a recital of the facts upon which he bases his conclusion. This is the well settled law in this state. *Crowe v. Peters*, 63 Mo. 429; *Moore v. Moore*, 67 Mo. 192; *Appleby v. Brock*, 76 Mo. 314. But the value of such opinion depends wholly upon the opportunity the witness has had to observe the conduct of the person whose mind is in question and upon the incidents actually observed. These circumstances should be stated, *first*, to make the opinion competent as evidence; and *second*, to enable the jury to estimate the value of the opinion. Indeed a non-professional witness may relate

the facts without expressing any opinion at all, leaving it to the jury to draw the conclusion with or without the aid of experts. The court erred in the first instance in excluding the offered evidence, but, as the witnesses were recalled and permitted to testify, the error was corrected and therefore constitutes no ground for reversal.

2. At the close of all the evidence the plaintiff asked a number of instructions, some of which were given and others were refused. The bill of exceptions shows that the court suggested to counsel for plaintiff that if he would prepare and ask certain instructions, they would be given. Counsel prepared and asked the instructions and they were given. The complaint is now made that in this way the trial court in effect compelled the plaintiff to adopt its theory of the case or go to the jury without instructions.

This court cannot listen to such complaints. The attorney for the plaintiff had a right and it was his duty to prepare and ask instructions presenting his theory of the case. If refused he could save his exceptions. Though these instructions were prepared and asked at the suggestion of the judge, they must be treated as instructions given at the request of the plaintiff, and he will not be heard to complain of them.

3. The next complaint is that the trial court compelled the plaintiff to carry the burden of proof throughout the trial. We find no ruling on that subject until we come to the instructions, and then we find the court gave these instructions at the request of the plaintiff:

"The burden of proof is upon the defendant to establish to the reasonable satisfaction of the jury that it could not discover any insufficiency of the grip-shanks or rail-brakes, if any there was, by the exercise of the utmost practicable skill and human foresight."

This instruction goes to the full extent of the cases cited, namely, *Lemon v. Chanslor*, 68 Mo. 340; *Hipsley v. Railroad*, 88 Mo. 348; *Coudy v. Railroad*, 85 Mo. 85. It is as favorable to the plaintiff as the first instruction asked by him which was refused. The instruction is very favorable to the plaintiff and his complaint is not well founded.

4. The plaintiff asked the following instructions numbered 2 and 7:

"2. The court instructs the jury that defendant was bound to use the utmost practicable care and diligence with reference to its cars, including its brakes and grip-irons for the safety of its passengers, and, if you believe from the evidence that the plaintiff, Mr. Sharp, on or about the eighth day of February, 1888, entered the cars of defendant for the purpose of being conveyed from one point to another as a passenger thereon, and you further find from the evidence that when said cars were nearing the top of the incline on Ninth street between Union avenue and Jefferson street in Kansas City, Missouri, the grip-iron by reason of its being so insufficient in structure, or so weak or worn as to render it unsafe for holding said cars to the cable rope and broke by reason thereof, and that the brakes were so weak or so constructed as to be insufficient for the purpose of holding said cars on said incline, and that the same was known to the defendant or by the exercises of reasonable care and diligence might have been known by it at any time before starting such cars up said incline, and you further find from the evidence that the plaintiff received the injuries complained of by reason of such defective grip or brakes without fault on his part directly contributing thereto, then he is entitled to recover in this action."

"7. The court instructs the jury that the plaintiff charges three distinct grounds of negligence, to-wit:

*first*, an insufficient grip-iron; *second*, insufficient brakes; *third*, and negligence on the part of the employes operating the train.   It is not necessary, in order to entitle the plaintiff to recover in this action, that he prove all three of said grounds, but if you find from the evidence that plaintiff has proven either of the grounds mentioned and that the plaintiff was injured without his fault by reason thereof, then he is entitled to recover.''

The court gave the seventh, but refused the instruction numbered 2, and of this ruling error is assigned.   This second instruction is certainly favorable to the defendant and should have been given. Indeed the defendant does not claim there is error in it; but the claim is that it is fully covered by the following instructions numbered 3 and 4 given by the court of its own motion:

''3. If the jury believe from the evidence that the plaintiff was a passenger upon the train of defendant, and by reason of the breaking of the shank upon the grip attached to said train, or by reason of a defective condition of a rail-brake from wear on said train, the plaintiff was injured without fault on his part directly contributing to produce such injury, then the jury will find for the plaintiff unless they are reasonably satisfied from the evidence that the liability of the shank to break or insufficiency of such rail-brake from wear, if any, was not known to the servants of the defendant, or was such as could not by the exercise of the utmost practicable care and human foresight have been known to them before accepting the plaintiff as a passenger at the time in question, in this event the verdict should be for the defendant unless defendant's servants in charge of such train were negligent as submitted in the next instruction.

"4. If the speed of the train in question became beyond the control of the servants in charge thereof by reason of neglect of such servants to use the appliances upon such train for stopping the same with the utmost practicable skill under the circumstances, and the plaintiff was injured thereby without fault on his part contributing directly thereto, then the jury will find for the plaintiff."

This instruction numbered 4 relates to the alleged negligence of the persons in charge of the trains in the use of such appliances as they had, and not to negligence in furnishing or keeping the appliances in repair, and cannot be said to be a substitute for the refused instruction numbered 2. Nor does the third constitute a full substitute for the refused instruction. The refused instruction, taken in connection with the seventh which was given, predicates a right on the part of the plaintiff to recover on proof of the fact "that the brakes were so weak or so constructed as to be insufficient for the purpose of holding the train." As to the brakes, this third instruction places the right to recover on the ground that plaintiff was injured "by a defective condition of the rail-brake from wear on said train." The refused instruction places a right to recover on defective construction, while the instruction given places the negligence in a failure to repair. The instructions are therefore not the same.

It may be suggested that there is no evidence that any of the brakes were defective in construction. There are two answers to this suggestion. The first is that the brakes proved insufficient to hold the cars, and this proof made a *prima facie* case for the plaintiff. The second is that there is some direct evidence to the effect that the wedge-brake, as it is called, was imperfect in its construction. Speaking of this brake the gripman says he knew nothing of the particular wedge-

brake, but he had tried several of them, and could never get one down; that they were all made alike—all that he ever saw.

Again this third instruction excuses the defendant if the liability of the grip-shank to brake or the insufficiency of the rail-brake was either not known to the defendant, *or* was such as could not have been known by the utmost practicable care, etc. There is here a misuse of the word *or* for *and*; for it cannot be contended that mere want of knowledge of the insufficiency of the grip or brake would relieve the defendant, and that is what this instruction says as prepared and given.

5. The court at the request of the defendant gave this instruction:

"If you believe from the evidence that the breaking of the grip was caused by extreme cold weather, and the failure of the brakes to stop the train was by reason of the icy and slippery condition of the track, you will find for the defendant, unless you further believe that plaintiff's injury, if he was injured, was caused by the negligence of the defendant's servants in operating its cars."

This instruction is clearly and obviously erroneous. There is no evidence in the case showing or tending to show extreme cold weather; nor does the evidence show or tend to show a condition of the track other than that to be expected during the winter months. The defendant, in supplying the grips and brakes and in keeping them in repair, was bound to anticipate and take into consideration all such weather and conditions of the track as might be reasonably expected in this climate. The very fact that the weather was cold and the track slippery called for the exercise of increased care in respect of both the grips and the brakes. The defendant's fifth instruction is subject to the same objection.

6. The court, by another instruction, given at the request of defendant, told the jury that it was improper and illegal for them to arrive at a verdict by first agreeing that each juror should set down the amount, if any, which he was in favor of awarding the plaintiff, divide the aggregate by twelve, and that the result thus obtained should be their verdict.

A verdict made by virtue of and pursuant to such an agreement amounts to misconduct on the part of the jury, and ought not to stand. *Sawyer v. Railroad*, 37 Mo. 242; *State v. Branstetter*, 65 Mo. 149; 2 Thompson on trials, sec. 2602. The law is also well settled that jurors are not competent witnesses to impeach their own verdict. *Sawyer v. Railroad, supra;* 39 Mo. 431; 65 Mo. 149; 68 Mo. 205. In general there is, therefore, no way to prove that a verdict is the result of such an agreement, and hence the propriety of giving instructions on the subject. The instruction states a correct proposition of law, and there was no 'error in giving it.

This record does not present any question concerning negligence on the part of the plaintiff in leaving or jumping from the car and hence nothing has been said upon that subject. The judgment is reversed and the cause remanded for a new trial. All concur.