## THE STATE v. SPEYER, Appellant.

Division Two, March 6, 1906.

1. INFORMATION: Amendment: Verification: Re-Arraignment.
No error was committed in permitting the prosecuting attorney
to amend an information by adding the proper verification; nor
was it necessary to re-arraign the defendant after the informa-
tion had been so amended.

2. INSTRUCTIONS: Insanity: Previously Covered.   Where the
subject of insanity has been fully covered by instructions given
by the court, no error is committed in refusing instructions
requested by defendant on that subject.

3. EVIDENCE: Letters Written by Defendant: Insanity.   Where
defendant was charged with killing his six-year old son, and
his defense was insanity, no error was committed in excluding
letters written by defendant to his wife prior to the killing,
when such letters had no tendency to prove his insanity, but
went only to show his affection for the child.

4. ————: Defendant's Insanity: Opinion of Wife: Basis of Opin-
ion.   Defendant's wife testified that she knew defendant was
insane on two occasions prior to the killing of his son; that
"he was insane when he tried to jump out of the window with
the little boy, and he was insane when he had the delusion that
the Indians were after him. My knowledge is based upon the
change which suddenly took place. I saw the awful change
that had taken place in his' every expression. He had delus-
ions,. because there were no Indians in that part of the State
of Louisiana." *Held,* that the court committed reversible error
in excluding that part of the witness's testimony in which she
gave her reasons for her opinion that defendant was insane,

since it was her observations of defendant and the statement of facts upon which her conclusion was based that rendered her opinion as to his insanity admissible.

5. ———: Occurrences Prior to Crime: Incompetent. Where the testimony of a witness as to what occurred between her and defendant prior to the commission of the crime has nothing to do with the case, and its only tendency is to unjustly prejudice the minds of the jury against the defendant upon an issue not involved in the trial, it should be excluded, notwithstanding it may have been partially brought out by defendant on cross-examination of the witness.

6. ———: Expert Witness: Insanity. Where the defense is insanity, questions propounded to experts as to whether or not excessive fright, pain, sorrow, pleasure, or joy would prevent thought from taking place and produce insanity, are independent, preliminary questions, and it is not necessary that a foundation be laid or testimony be introduced to authorize the asking of them.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Wofford,* Judge.

REVERSED AND REMANDED.

*W. F. Riggs* for appellant.

(1) The right to attach an affidavit made on information and belief, without venue or seal, without notice to defendant, and without re-arraignment, which is the only way to inform a defendant, is most seriously questioned. (2) The court erred in ruling out the question asked Dr. McDonald, on cross-examination. State v. Speyer, 182 Mo. 92; 3 Witt. & B. Med. Jur., p. 189.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1) The verification is not "a part of the information, but a step directed to be taken in aid of it, . . . neither is the sufficiency of the information affected by it." State v. Brown, 181 Mo. 232. The prosecuting

attorney in open court, and the presence of the defendant and his counsel, was permitted by leave of court to verify the information, and being no part of the information, such verification did not necessitate the rearraignment of the defendant. (2) The court did not err in sustaining an objection to the question propounded to witness Dr. McDonald on cross-examination. No evidence had been introduced tending to prove any one of the conditions of mind in the defendant, assumed in the question. The law is well settled that an expert witness should not be asked his opinion on hypothesis, including facts not shown by the evidence. State v. Palmer, 161 Mo. 152; State v. Dunn, 179 Mo. 95; State v. Brown, 181 Mo. 192; Rogers on Expert Testimony (2 Ed.), 67. (3) Appellant complains of error in the rulings of the court in sustaining objections to questions propounded to expert witnesses by defendant. It will be found that the questions to which objections were sustained were questions based upon abstract propositions of mental science and not upon the facts in evidence, and, therefore, were objectionable. State v. Palmer, 161 Mo. 152; State v. Welsor, 117 Mo. 570; State v. Dunn, 179 Mo. 95; Rogers on Expert Testimony; sec. 27.

FOX, J.—This cause is here by appeal from a judgment in the criminal court of Jackson county, Missouri, convicting the defendant of murder of the first degree. The indictment upon which this judgment of conviction rests charges the defendant with feloniously, willfully, premeditatedly, deliberately and with malice aforethought killing one Freddie Speyer, a son of the defendant, aged about five or six years, on the 16th of July, 1902, at Kansas City, Missouri.

This is the second appeal of this case and it is conceded by both appellant and respondent that the facts as developed at the trial of this cause are practically and substantially the same as were shown by the record upon the former appeal. The result of the first

appeal in this cause will be found reported in the 182 Mo. 77. In that volume the facts as to the tragical killing by the defendant of his son Freddie Speyer are carefully and fully set forth, hence we deem it unnecessary to burden this opinion with the reproduction of the facts as stated upon the former appeal.

Upon this trial, at the close of the evidence, the court instructed the jury upon murder in the first degree, on appellant's defense of insanity, together with instructions on the credibility of witnesses, reasonable doubt and other general instructions applicable to the issues presented. The cause being submitted to the jury upon the evidence and instructions of the court, a verdict finding the defendant guilty of murder of the first degree was returned. Motions for new trial and in arrest of judgment were timely filed and after being taken up by the court were overruled. Sentence and judgment followed in accordance with the verdict returned and from this judgment defendant in proper form prosecuted his appeal to this court and the record is now before us for consideration.

OPINION.

The record before us discloses the assignment of numerous errors as a basis for the reversal of this judgment. We will give those which we deem of sufficient importance such consideration as their importance merits and demands.

I. It is insisted by counsel for appellant that the court committed error in overruling the defendant's motion to quash the information.

Upon the former appeal the information in this cause was not verified as required by the provisions of the statute; however, it was held upon that appeal that, since appellant failed to take advantage of the failure to verify by an appropriate motion to quash, the question of want of verification was not open to review in

this court. Upon the cause being remanded for a new trial the prosecuting attorney, in open court, in the presence of the defendant and his counsel, was permitted to amend the information by adding the necessary verification, and it is to this action of the court, and its failure to re-arraign the defendant upon the information as amended, that appellant's complaint is directed. There was no error in the action of the court in its overruling of the motion to quash. The information was in proper form and charged the offense in such terms as have repeatedly met the approval of this court.

It was ruled by this court in State v. Brown, 181 Mo. l. c. 232, that the verification provided by the statute is not a part of the information, and its purpose is to afford the defendant a guarantee of the good faith of the prosecution and to prevent a careless and reckless prosecution of a citizen, and there was no error in permitting this information to be amended by adding the proper verification. It was not an amendment that in any way affected the substance of the information, but was simply sought for the purpose of having it comply with the formal requirements of the statute. By express provision of the statute informations may be amended at any time before the trial as to matters of form or substance. [Sec. 2481, R. S. 1899.]

The defendant had previously entered his plea of not guilty to the information which charged the commission of the offense, and there was no necessity for his rearraignment to it after an amendment as to a mere matter of form.

II. Appellant complains of error at the action of the court in refusing instructions requested by the defendant numbered 1, 2 and 3, which were as follows:

"1. The court instructs the jury that if you shall find and believe from the evidence that the defendant cut the throat of Freddie Speyer with a pocket knife, and from such wound the said Freddie Speyer died, and

shall further find and believe from the evidence that immediately before such act the defendant had been accused of crime and placed under arrest, and that threats and demonstrations were made in his presence which led him to believe that he was in imminent peril of being immediately hanged, or suffering great bodily injury, and such belief, coupled with fear of leaving his son alone in the world, suddenly caused and produced a condition of fright in the mind of defendant, which fright suddenly arrested his powers of reflection to such an extent that at the time and immediately before he struck the homicidal blow he was incapable of deliberation and in fact did not deliberate, as that term is defined in the other instructions, and was incapable of distinguishing right from wrong in reference to such act, then you will find the defendant not guilty of murder in either degree.

"2.   The court instructs the jury that fright, or excessive pain or sorrow, pleasure or joy, can prevent thought from taking place, and that such condition exists in the insane; the self-consciousness being so changed or affected that the usual response to impressions no longer takes place, leading thus in an abnormal way to abnormal feeling, thought and volition.   If, therefore, the jury shall believe and find from the evidence that immediately before, and at the time the defendant cut the throat of Freddie Speyer with a pocket knife, if he did so, the mind of defendant was in an insane condition caused and produced by fright, or excessive mental pain or sorrow, to such an extent that the self-consciousness of defendant was so changed or affected by such mental shock that the usual response to impressions received into consciousness no longer took place, leading thus in an abnormal way to abnormal feeling, thought and volition, and that the homicide was committed while defendant was in such abnormal condition, if the jury find he was in such abnormal condition, then you will find the defendant not guilty of murder in either degree.

"3. If the jury believe and find from the evidence that the homicide was the result of fright or mental shock, and not the result of malice, then you are instructed that what caused this fright or mental shock is immaterial, and although you may believe that others would not have been so shocked or frightened under similar circumstances cannot be considered as evidence against this defendant."

There was no error committed by the court in the refusal of the instructions herein indicated, requested by defendant, for the reason that the subject of insanity, to which those instructions were directed, was fully covered by instruction 12 on that subject, given by the court, and, as was said by this court upon the former appeal, "The instructions on insanity were correct and full and such as have been approved by this court in numerous cases." The instructions given by the court upon the subject of insanity embraced every phase of that dread disease, and the jury were required to consider all the evidence upon the subject of the insanity of the defendant, whether such insanity was caused by fear, pain, sorrow, pleasure, joy, or by any other cause. Instructions should be of a general nature covering all the facts, and directions to the jury which make prominent any particular state of facts developed in the trial have not met with the approval of this court. The jury were expressly directed in instruction 12, on the question of the sanity or insanity of defendant, to consider all the evidence offered in the case, the homicide itself and the attending circumstances, the life, habits and conduct of the defendant, as well as his mental capacity or perverseness, if any, from his birth up to the present time. The instructions given fully covered the feature of the testimony applicable to the insanity of the defendant.

III. Appellant most earnestly complains at the action of the trial court in excluding testimony offered

by the defendant. There was no error in the exclusion of the letters written by defendant to his wife in New Orleans prior to the commission of the offense with which he is charged. We have carefully considered the contents of those letters, and while in cases involving the question of insanity a wide latitude is permitted by the courts in matters of the proof of the acts, conduct and statements of such persons, yet such declarations and statements must have some bearing upon the issue presented, that is, of the condition of the mind of the person undergoing investigation. These letters had no tendency to prove the insanity of the defendant, but clearly the only purpose of them was to show his devotion, fondness and affection for his child that he afterwards killed, thereby negativing any motive in the commission of the act. As was said in State v. Kring, 64 Mo. l. c. 594: "Such letters could be no evidence of the facts stated in them, and the court should so instruct the jury;" and if the letters offered in evidence in this cause were not to be considered as evidence showing his fondness and affection for his child, and their tendency was simply to show that fact, we are unable to conceive what other purpose they could serve. It must not be understood, by the conclusions reached as to these letters, that we mean to say that the letters of a defendant, whose mental condition is under investigation, are not competent evidence, but we simply hold that the contents of the letters offered in evidence must have a tendency to show mental unsoundness. So far as affection, fondness and devotion of the defendant to his child are concerned, such facts were susceptible of proof in the ordinary way, and were established by the testimony of the wife of the defendant, but we are unwilling to go to the extent of saying that such a fact is susceptible of proof by the defendant himself simply writing a letter disclosing such fondness, etc., for his child. It is clear in the Kring case that the letters treated of by Judge NAPTON, written by the defendant to Mrs. Broemser,

were of such a character as tended to throw light on the mental incapacity of the defendant.

There is no dispute on the legal proposition that letters written by a defendant which show signs of mental weakness, upon an investigation of his mental condition, are competent evidence. Upon an investigation of the mental soundness of a person his oral declarations are frequently offered in evidence, and declarations made in letters may also be shown, but it must be remembered that the crucial test as to the admissibility of either oral declarations or declarations in the shape of letters written by a defendant is, whether or not they have any bearing upon the subject under investigation, that is, the insanity or mental incapacity of the person undergoing investigation. The letters offered in evidence in this cause had no such tendency, hence there was no error in their exclusion.

The most serious ground for the reversal of this judgment and sentence, embraced in the contention of appellant of improper exclusion of testimony, is the exclusion of a part of the answer of Mrs. Speyer in which she undertook to give the reasons for her conclusion or opinion that the defendant was at certain times insane. That this alleged error complained of may be fully appreciated, we here reproduce the question propounded to Mrs. Speyer and her answer to the question, and the portion of the answer excluded by the court to which the appellant duly excepted: "Q. Do you know whether or not the defendant has ever been insane? And if you answer affirmatively, state upon what your knowledge is based? A. I know that he has been positively insane on two occasions. He was insane when he tried to jump out of the window with the little boy, and he was insane when he had the delusion that the Indians were after him. My knowledge is based upon the change which suddenly took place. I saw the awful change that had taken place in his every expression. There was the change in the personality.

He had delusions, because there were no Indians in that part of the State of Louisiana.

"Mr. Taylor: We object to that part of the answer—'my knowledge is based upon the change which suddenly took place. I saw the awful change that had taken place in his every expression. There was the change in the personality. He had delusions, because there were no Indians in that part of the State of Louisiana.'

"The Court: Sustained.

"To which ruling of the court defendant at the time duly excepted."

It is clear upon this proposition that the witness, Mrs. Speyer, who was a non-expert witness, had the right to give her opinion as to the insanity of the defendant prior to the killing of his son, Freddie Speyer. It is now no longer an open question in this State that ordinary witnesses may give such opinions, but in addition it must appear that such opinions are predicated upon observations, and the witnesses must state the facts upon which such opinion is based. [3 Rice on Evidence, sec. 21, p. 28; Ford v. State, 71 Ala. 385; State v. Bryant, 93 Mo. 273; Appleby v. Brock, 76 Mo. 314; State v. Klinger, 46 Mo. 224; Crowe, Admr., v. Peters, 63 Mo. 435; Moore v. Moore, 67 Mo. 192; State v. Erb, 74 Mo. 199; State v. Soper, 148 Mo. 217.]

While the question and answer herein indicated are perhaps a little irregular in form, yet we think it is clear that the question must be treated as simply asking the opinion of the witness as to the insanity of the defendant, and the answer must also be treated as giving the opinion of the witness in response to the question as to the insanity of the defendant, for it is manifest that the witness could only give her opinion upon that subject.

It is perfectly apparent that in the opinion of Mrs. Speyer the defendant was insane on two occasions prior to the commission of the act with which he is now

charged, and she so states. The record discloses that there was no objection to her stating that the defendant was insane on two prior occasions, but when she comes to give the basis for such opinion there is an objection, and the court excludes that part of her answer. This simply confronts us with the question as to whether, under the well-settled rules of law in this State, the exclusion of that part of the answer constituted reversible error. We are of the opinion that it did. It was her observations of the defendant and the statement of facts upon which her conclusion that the defendant was insane was based, that rendered her opinion as to his insanity admissible. It was the statement of reasons and facts upon which her opinion as to his insanity was predicated, which gave any force or vitality to that opinion, and when the court excluded that part of her answer it left her opinion as to the defendant's insanity standing without any basis upon which it could rest, and excluded from the jury the most essential feature of her opinion upon the subject of her husband's insanity, and deprived them from considering the reasons assigned for such opinion in determining the weight to be attached to the expression of opinion by Mrs. Speyer that her husband was on two prior occasions insane. Mrs. Speyer, as a reason for her conclusion that the defendant was insane, states: "I saw the awful change that had taken place in his every expression. There was the change in the personality. He had delusions, because there were no Indians in that part of the State of Louisiana." She was intimately associated with the defendant as his wife, and the reasons she assigned for her opinion as to his mental condition were certainly a sufficient basis upon which to predicate the opinion expressed.

It was said in Appleby v. Brock, supra, in discussing the subject of the admissibility of the opinion of witnesses upon the subject of insanity, that "the opinion of an intelligent witness, having adequate opportun-

ity of observing and judging, is the best testimony which can be adduced."

Under the law of this State the jury were clearly entitled to such reasons assigned in determining the weight to be given to the opinion expressed by the witness. This part of the answer excluded by the court was highly important to the defense of the appellant interposed in this case. It was the reasons and facts upon which the opinion of this lay witness was predicated, which gave it force and vitality and it was error on the part of the trial court to exclude it.

Mrs. Speyer further testified that "one time he was sitting on the edge of the bed playing with the baby, when all of a sudden he grabbed the child and tried to jump out of the window with him. I screamed and grabbed hold of the child and took him away from him, and had to shake Mr. Speyer before he seemed to recognize me. I noticed his face appeared flushed, his eyes had a wild look. I became frightened, and for the safety of the child had to take him home to my people. After that he never looked the same. Looked wild in his eyes. In 1898 he imagined the Indians were after him. He got up in the night, saddled his horse and rode 20 miles, and came back all wet, and the horse covered with sweat and exhausted. He said the Indians were after him." The court, over the objection and exception of the defendant, excluded from the consideration of the jury that portion of the foregoing statement in which she stated, "I became frightened and for the safety of the child had to take him home to my people." While the exclusion of this part of her statement may not constitute reversible error, and as a general rule the conduct and action of the witness in any particular transaction is incompetent, yet upon this investigation, involving the ascertainment of the mental condition of the defendant, we can see no serious or valid objection to the admission of that part of her statement. As before stated, in cases in which the mental condition of a

person at the time of a certain act is in issue, a wide. latitude is permitted by the court in the matter of proof. In the statements of this witness it will be observed that she was describing a scene which occurred in which the defendant was the particular actor, about which she was subsequently asked her opinion as to his sanity or insanity, and the part of the statement excluded by the court was nothing more than a statement indicating how his conduct impressed her, which at least the jury had a right to consider in determining the weight to be attached to her opinion, which was subsequently expressed, that the defendant was insane at that time.

Appellant complains of the examination by the State's counsel, as disclosed by the record, of Marguerite Tennis. It is sufficient to say of this examination complained of that the learned trial judge permitted the re-direct examination for the only reason that can be urged in support of its admissibility, that is, that the defendant, by his improper cross-examination, at least gave some warrant to the prosecuting attorney in conducting the re-direct examination as disclosed by the record. We will say that any testimony by this witness as to what occurred between her and the defendant prior to the killing of Freddie Speyer has absolutely nothing to do with this case. The effect of such testimony can only have the tendency to unjustly prejudice the minds of the jury against the defendant upon an issue not involved in the trial of this case, and upon its retrial all references of this witness having met the defendant prior to the time of the killing, and the length of time that she was with him, should be promptly excluded. While this witness, Marguerite Tennis, in her examination in chief, cross-examination and re-direct examination says but little which has any bearing upon the issues involved in this case, yet there is in her testimony some insinuations or statements from which the jury might draw inferences that the defendant had com-

mitted some unlawful act in respect to this witness, and it is not uncommon that a mere insinuation of the commission of a wrong is about as injurious as a positive and broad statement that the wrong was committed; therefore, it is highly important that no such testimony be permitted to go to the jury.

Again, it is not inappropriate to suggest that the questions propounded to the experts, Drs. Burnett and Hanawalt, as to whether or not excessive fright, pain, sorrow, pleasure or joy would entirely prevent thought from taking place, were proper questions to be propounded to experts who were introduced by the State or the defendant to testify upon the subject of insanity. The propriety of these questions does not rest upon the theory that a foundation must be laid in order to authorize the propounding of them, nor are they to be regarded as hypothetical questions requiring testimony to be introduced as a basis for the asking of them. These questions stand as independent preliminary questions to experts, and the appellant had the right to fully inquire in respect to their knowledge of the subject about which they proposed to testify, and if the appellant's theory of this case was that he was insane by reason of excessive fright, pain, sorrow, or any other cause, even before any testimony had been introduced along that line, he had a perfect right to make inquiry of the experts as to what their knowledge was as to the causes which would produce insanity. It certainly will not be seriously contended that when an expert is first placed on the stand it would be incompetent to ask him the question as to what are the usual and most frequent causes of insanity, and on the same principle it is not objectionable to ask an expert when on the stand if certain conditions surrounding an individual have a tendency to prevent thought or produce mental incapacity.

No one can review the evidence in this cause, fully considering the circumstances and conditions surround-

ing the defendant at the time that he destroyed the life of his six-year-old boy, without being convinced that, upon the subject of the mental condition of this defendant at the time of the killing, this is not a one-sided case. As was said by this court upon the former appeal in this case, "This record presents a case exceptional in all its features. A father is charged with the murder of his innocent, unoffending and sleeping child. That he cut the little boy's throat with a knife is conceded. The evidence discloses that up to the fatal moment when he plunged the knife into the little one's throat he had cherished the warmest affection for his child and had scrupulously cared for all his wants. There is not the slightest evidence of any criminal purpose in taking the child's life beyond that which the law will presume from the act itself. The very enormity of the act suggests a doubt of the sanity of the defendant. The child himself did not and could not have been guilty of anything which the law would regard as a provocation either just or unlawful. The evidence tends to show that the warmest affection existed between the father and the little one. We are compelled to look for an explanation of this most unnatural deed in the circumstances detailed by the witnesses. The killing of the child is traceable to the circumstances surrounding the defendant at the time and just prior to the fatal act."

It is always with reluctance that this court disturbs the judgment of the trial court; and if the defendant in this cause was sane and feloniously, willfully, deliberately, premeditatedly and with malice aforethought killed his innocent, unoffending six-year-old boy, he justly merits the punishment imposed by this judgment; on the other hand, if he was insane and his mental condition was such at the time of such killing that he did not realize the criminal act he was committing, then it is equally clear that the penalty of this judgment should not be inflicted upon him.

The infliction of the death penalty can only be justified by a trial of this cause free from any error which tends to prejudice the rights or interests of the party accused.   With all due respect for the learned judge presiding at the trial of this cause, we are of the opinion, as herein indicated, that errors were committed which deprived the defendant of that full and thorough showing he was entitled to make under the law upon the subject of his insanity, which was interposed as a defense to this criminal prosecution.

We have thus given expression to our views upon the record before us, which results in the conclusion that the judgment in this cause should be reversed and the cause remanded, and it is so ordered.

All concur.