242 S.W.2d 54 (1951)
CHRUM et al.
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 42057.
Supreme Court of Missouri, Division No. 1.
July 9, 1951.
Motion for Rehearing or to Transfer to Denied and Opinion Modified on Motion September 10, 1951.
*55 Mattingly, Boas & Richards and Lloyd E. Boas, all of St. Louis, for appellant.
Orville Richardson, Leland Jones, and Hullverson & Richardson, all of St. Louis, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied and Opinion Modified on Court's Own Motion September 10, 1951.
HOLLINGSWORTH, Judge.
Plaintiff recovered a verdict and judgment for $53,000 for personal injuries sustained as she attempted to alight from defendant's motorbus in the City of St. Louis. Upon defendant's motion for new trial, the trial court found the verdict excessive and conditionally ordered a remittitur of $20,000, with which plaintiff complied. Judgment was then rendered for $33,000. Defendant appealed, assigning as error: (1) rendition of a quotient verdict, (2) the declaration in a given instruction that plaintiff was a passenger on the bus, (3) improper argument of counsel, and (4) gross excessiveness of the verdict after remittitur.
Plaintiff, then aged six years, was injured on the morning of August 1, 1947. She and her cousin, Harry Williams, then aged twelve, were riding on a bus operated northward on Hamilton Avenue. As the bus approached Minerva Avenue, Harry pulled the signal cord for the bus to stop at Minerva, and he and plaintiff went to the central exit door to alight when the bus stopped. After the bus had stopped and the doors were opened, Harry got off and turned to assist plaintiff. As she, with Harry's aid, stepped to the street, the doors of the bus closed, catching her right arm. The bus moved forward, throwing Harry against its side and dragging plaintiff upon the street with her arm caught in the door and her back toward the front of the bus. Harry ran forward, yelling to the operator to stop the bus. Plaintiff's arm became free of the door and she fell to the street as the bus stopped. She then lay at the rear end of the bus, crying and vomiting. Shortly thereafter, she was taken to the hospital. Other facts will be stated as necessary.
The verdict, as returned by the jury, assessed plaintiff's damages at "$53.000 Dollars". Counsel and the court conferred out of the hearing of the jury, during which counsel for defendant asked that the jury be returned to their room to return a proper verdict. The court, over the objection of counsel for defendant, asked the foreman to state in the presence of the other jurors the amount of the verdict. The foreman thereupon replied: "The amount of the verdict, each one of us wrote down a number and * * *" The court interrupted him and directed him to state the amount, and he stated: "All right, $53,000." The court then directed the clerk to read the verdict. Counsel for defendant insisted that each juror "put down the amount" and that each juror indicate how the verdict was reached, and moved that the verdict be stricken. An objection to this procedure was made by counsel for plaintiff and was sustained. The verdict was ordered received and filed. Thereafter, *56 fifteen slips of paper were found in the jury room with figures ranging from "275" to "65,000", but with many other unintelligible figures and notations thereon.
Defendant's contention that the above evidence shows a quotient verdict is without merit. The law is settled in this State that unless a prearrangement exists among the jurors to accept an unascertained quotient as their verdict, a verdict arrived at by the method of totaling suggested amounts and taking the quotient thereof, if then agreed upon, is not invalid; and the presumption is that there was no such prearrangement. There was no evidence to overcome the presumption. Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, 977; Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W.2d 163, 170. Neither did the court err in refusing to permit the jurors to further reveal the manner in which they arrived at their verdict. A juror may testify in support of a verdict, but may not give evidence to contradict or destroy it. Jordan v. St. Joseph Ry., Light, Heat & Power Co., 335 Mo. 319, 73 S.W.2d 205, 210; Stith v. J. J. Newberry Co., 336 Mo. 467, 79 S.W.2d 447, 457.
Defendant contends the court erred in declaring in Instruction No. 1 that plaintiff "was a passenger on defendant's bus * * * even if she paid no fare * * * and therefore the defendant owed her * * * the highest degree of care * * *." Plaintiff alleged in paragraph (4) of her petition that she was a passenger on the bus. Defendant admitted all of the allegations of this paragraph "except that defendant denies that plaintiff was a fare paying passenger." A mere denial that plaintiff was a fare paying passenger does not amount to a denial that she was a passenger. Moreover, she was a passenger if she rode as a passenger with the consent of defendant. The bus operator testified that although plaintiff made no statement as to her age he permitted her to ride without paying fare, believing she was only five years of age and entitled to free transportation. Succinctly stated, the evidence shows that plaintiff offered herself as a passenger without tendering fare and the defendant's operator-agent accepted her without demanding a fare. She did not enter the bus secretly not did she refuse to pay a fare. Under these circumstances, she became a passenger and entitled to all of the rights of a passenger. Buck v. People's Street-Railway & Electric Light & Power Co., 108 Mo. 179, 18 S.W. 1090; Graves v. Missouri Pac. R. Co., 342 Mo. 542, 548, 118 S.W .2d 787. The court did not err in so instructing the jury.
Defendant complains of a portion of the closing argument made by plaintiff's counsel. Contrary to plaintiff's evidence, certain of defendant's witnesses had testified that plaintiff stepped clear of the bus, the door was closed and she was seen by them to be walking away from the bus. One witness said she was upon the sidewalk as the bus moved forward, that she then heard a scream behind the bus, and it stopped. But these witnesses gave no testimony as to how plaintiff came by her injuries. In arguing this phase of the conflicting evidence, plaintiff's counsel stated: "The evidence presents a rather clear-cut issue, I would say. Was this child injured by the closing of the doors and the starting of the bus, or was she safely on the sidewalk? The defense has not given you one iotathe bus company has not given you one iota of evidence of what caused that child to be injurednot one. She is taken to the hospital with multiple contusions and abrasions, a fractured pelvis, an injured diaphragm and the rest of her body in a mangled condition. How did she get that way? Mrs. Kaufmann says she was walking back by the fence. Where did she get those multiple contusions and abrasions of the body unless the bus dragged her along the street? Where did she get that fractured pelvis and injured diaphragm unless they had dragged that little body down the street? What single witness have they got to show how this little body came to be fractured and bruised." The argument was pertinent and we hold the trial court did not abuse its discretion in permitting it to be made. Griffith v. Gardner, 358 Mo. 859, 217 S.W.2d 519, *57 527-531; Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, 682-684.
Defendant finally contends that the judgment, reduced by remittitur to $33,000, is still grossly excessive. The test is whether the size of the judgment, reduced by remittitur, still is shockingly excessive. Eller v. Crowell, Mo.Sup., 238 S.W.2d 310, 316; Cruce v. Gulf, Mobile & Ohio R. Co., Mo.Sup., 238 S.W.2d 674. There was much evidence as to whether plaintiff's present physical condition is the result of injuries sustained in the accident or the result of childhood illnesses and infirmities. The trial court had the right and duty in the first instance to consider all of the evidence in determining whether the verdict was excessive. Steuernagel v. St. Louis Public Service Co., Mo.Sup., 238 S.W.2d 426, 430. But, in determining whether the trial court abused its discretion in ordering a remittitur of only $20,000, we review the evidence from the standpoint most favorable to plaintiff. Cruce v. Gulf, Mobile & Ohio, supra; Williamson v. Wabash R. Co., 355 Mo. 248, 196 S.W.2d 129, 134.
As stated, plaintiff fell to the street and lay there, vomiting and crying, until taken to the hospital. The hospital record shows:
"Chief complaint: Pain in abdomen; defect in breathing; pain in chest; some distress in throat. She had difficulty breathing and complained of pain in the throat around the larynx, and somewhat cyanotic in the lips and finger nails. Short inspirations followed by an expiratory grunt.
"Examination revealed she is conscious, a well-developed, white, six-year-old girl and having some difficulty in breathing.
"Examination: * * * neck, slight pain in upper trachea; thorax, symmetrical. Respirations are labored with short inspiratory phase and expiratory grunt. * * * Lungs: dullness to percussion over lower right ribs. Diminished breath sounds over the same area. Remaining lung areas are clear to auscultation and percussion. * * * Abdomen: tenderness to palpation over the bladder area and somewhat diffuse tenderness over the upper two quadrants of the abdomen. No palpable masses in viscera; mild rigidity of abdomen.
"Impression: 1. Possible internal abdominal hemorrhage. 2. Bruised left calf. 3. Respiratory distress from unknown cause."
X-rays taken that day showed comminuted fractures of the pelvis and an oblique fracture of the right femur. There was fragmentation, separation and overlapping of the pelvis fractures.
Plaintiff, admitted to the hospital on August 1, 1947, was discharged on August 10, 1947. She re-entered the hospital on August 27 and was again discharged on August 31, a total hospitalization period of fifteen days. Thereafter, the doctor visited her at her home several times. She began school attendance in late October of 1947. Since then she has attended school and was so attending at the time of the trial, walking one-half block to St. Barbara's until January of 1949, and thereafter eight blocks to St. Leo's.
Plaintiff was a normal, healthy child until the accident, had a good appetite and liked to play with other children and to take long walks with her mother. Since the accident she is "finicky" about her food, and often vomits. She does not like to play with other children and must be urged to do so. She refuses to take any walks at all. She complains of pains in the right side of her chest and right hip and in her privates. She can only sleep on pillows and is very restless, and has a slight limp on the right side.
X-ray pictures taken at intervals during the two periods of hospitalization revealed an increasing congestion of the right chest area and an increasingly marked elevation of the right diaphragm, until by August 28 it had changed its location upward to above the third rib. Further X-rays and fluoroscopic examinations made in March, 1949, and January, 1950, revealed the right diaphragm to be elevated to the third rib, near the line of the nipple and right armpit. It is permanently elevated and immobile and there is no known method of correcting it.
*58 The diaphragm is controlled by muscles. These muscles are, in turn, controlled by the phrenic nerve. If this nerve is sufficiently injured, the diaphragmatic muscles become flaccid, no longer active, and move upward. This condition permits the liver and stomach to also move upward and the liver presses upon the lung. It was the opinion of plaintiff's physicians that plaintiff's phrenic nerve was so injured or destroyed by the violence of the accident. They testified that her stomach and liver were elevated and the liver was pressing upon her right lung, and that they would so remain. The capacity of the right lung is diminished and needed aeration of the blood is decreased. While this does not render plaintiff more susceptible to respiratory diseases, yet if she has such diseases she will have more trouble "throwing them off." She will not henceforth be able to engage in strenuous activities and she should be restricted in them, practicing moderation.
Dr. Douglas A. Ries, testifying in behalf of plaintiff, stated that in March, 1949, he examined plaintiff and found:
"The child did not sit quietly in a chair, was getting up and sitting down and when sitting down kept on squirming in the chair although she did not appear to bethere was no evidence of acute distress or any discomfort present. She was observed to walk with a fairly normal gait; that is, I was not able to find any limitation of either extension or flexion of either foot when she walked and she was able to change positions in a normal manner without giving evidence of discomfort or difficulty in changing positions. * * * She was able to get up and get off the examining table without my assistance. Where they have any difficulty it will show in facial expression. She evidently had no pain because I did not find any change in facial expression; * * *. In her case I found no abnormalnothing remarkable. * * *
"Examination of the chest revealed the chest to be apparently symmetrical; both sides appeared the same. There was no evidence of any grunt at that time when taking a breath but there was a decrease in expiration in the right side. I wouldn't say that this was pronounced in this child and they are of any great length but there was that decrease in the right side. * *
"In percussion of the chest on the right side the diaphragm appeared to be abnormally elevated. * * *
"There was limitation in abduction of the right hip, that is, the right lower extremity at the hip joint. * * *
"In other words, when crossing my leg here (indicating), that is adduction; or bringing it, my leg apart, that is abduction. There was difficulty in the patient being able to perform that movement; that is, of crossing her legs on the right side, the right over the left. * * *
"It could be caused by a fracture of the pelvis in that region * * *."
On cross examination, he testified that there was a slight distortion of the pelvis, but it had no bearing upon the movement of her legs or activity other than the difficulty of crossing her legs. All of the fractures have good union, and there is no outward appearance of abnormality in that region. The only way distortion of her pelvis can be detected is in the X-ray.
Plaintiff's injuries were extensive. The elevated diaphragm, with its present and possible results, is permanent, as is also the actual but not objective distortion of the pelvis. She had suffered, and at the time of the trial still suffered, pain in her right hip, chest and privates. She is nervous, sleeps upon pillows and is restless, does not want to play or take walks, has loss of appetite and will be forced to restrict her activities. Under these circumstances, is $33,000 grossly excessive?
We have held there is no exact formula by which this issue can be determined. Eller v. Crowell and Cruce v. Gulf, Mobile and Ohio R. Co., both supra. We have also adopted the rule of reasonable uniformity of verdicts, Cruce v. Gulf, Mobile and Ohio R. Co., supra, but we have been cited to no case nor have we found one comparable to the injuries here under consideration.
We are forced to consider, however, that plaintiff's body bears no objective deformities. *59 Neither the elevated diaphragm nor the distorted pelvis can be seen. Her body remains symmetrical. There is no evidence that her pain and suffering will continue indefinitely or that her nervousness is permanent. The pressure upon her lung does not make her more susceptible to respiratory infections; it only makes it more difficult to combat them if and when contracted. The evidence does not affirmatively show that the slight limp which she had at the time of the trial is permanent, nor whether the difficulty in crossing her legs will continue. Apparently the only definite, presently ascertained and certain permanent ill result is the fact that her right lung is so impaired in its functioning that she will be precluded from strenuous activities and must, to that extent, live a more sedentary life than most children.
The only case cited by either party that appears helpful in determining the question is Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S.W.2d 653, 659. In that case the plaintiff, a three-year-old child, was struck by a streetcar and received injuries which necessitated the amputation of her leg below the knee. Fourteen days later she had to undergo another operation in which the muscles of the stump were sutured together with fat pads and the stump prepared to accommodate an artificial limb. She was hospitalized from February 1, 1943, to March 31, 1943. At the time of trial she was wearing an artificial limb requiring leather lacing about her stomach and up to her shoulder. She received permanent scars on the lateral side of her left thigh and buttock and a large, ugly irregular scar on both the medial and lateral aspects of the right thigh. The trial court reduced the verdict from $30,000 to $18,000, which, upon defendant's appeal was affirmed. The facts are not analogous. But the case does cite other cases wherein verdicts for lesser amounts for similar injuries were approved as being fairly compensatory. It does seem that the injuries in the Petty case and the cases therein cited were far more extensive, deformative, crippling and disabling than are plaintiff's injuries, yet the verdict in that case was only $30,000 in the first instance and, when reduced to $18,000, was found to be reasonably compensatory as compared to other similar cases. The case is not controlling or decisive and is considered only to the extent that the disabilities there present are comparable to plaintiff's disabilities.
Further discussion of the matter would be of no aid. After careful consideration of all factors, including present economic conditions, we believe the judgment is still grossly excessive in at least the amount of $8000. If, therefore, plaintiff files in this court within fifteen days a further remittitur of $8000 as of the date of the original judgment, the judgment is affirmed; otherwise, the case is reversed and remanded.
All concur.