**Anna K. MOORE, Appellant,**

**v.**

**Carrie KOPP and R. B. Manley, Executor of the Estate of Emil Charles Schramm, Deceased, Respondents.**

**No. 51059.**

Supreme Court of Missouri,
Division No. 2.

Feb. 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied March 14, 1966.

Robert A. McIlrath, Flat River, and W. T. McGhee, Brentwood, of counsel, for appellant.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, for respondent Kopp.

E. L. McClintock, Jr., Flat River, for respondent, R. B. Manley, Executor of the Estate of Emil Charles Schramm, Deceased.

PRITCHARD, Commissioner.

Plaintiff, a guest passenger, contends that prejudicial error was committed against her in the trial of her $75,000 personal injury action in these particulars: The giving of a contributory negligence instruction of plaintiff; the giving of sole cause instructions of the acts of one Blain in operating his Cadillac car on passing plaintiff's host, defendant Mrs. Kopp; that the sole cause instructions were in conflict with the contributory negligence instruction; that the court erroneously permitted the record of plaintiff's testimony in another previous trial to be read; and in permitting counsel for defendant Manley to argue an innuendo of settlement with said Blain. The action was dismissed without prejudice as to Blain at the outset of the trial because of lack of service of process upon him. Defendant Manley's decedent, Schramm, died subsequent to the collisions in question.

The verdict and ensuing judgment were for both defendants and against plaintiff upon her claims of negligence. The facts pertinent to this appeal are: On the morning of September 11, 1959, defendant Mrs. Kopp and another passenger, Mrs. Sigman, picked up plaintiff at her home in Flat River, Missouri, in order that they all might go to their work at Lee's Shopping Center in Farmington, Missouri. Mrs. Kopp was driving her Mercury car, Mrs. Sigman was seated in the front seat to her right, and plaintiff was seated in the rear seat directly behind Mrs. Kopp. They drove out of Flat River onto Highway 67 and proceeded south thereon for five miles

at a speed of between 35 and 40 miles per hour. They arrived at the Parkview Cemetery which was to the east of Highway 67 which is there built on a slight gradual curve, curving to the left as one proceeds southward. The weather was dry, the sun was shining, and it was a little after 8:00 o'clock in the morning. The highway there was of concrete, 18 feet wide, with two lanes, southbound and northbound, separated by a marked line in the center. At the north end of the curve there was a yellow "no passing" line in the southbound lane. Along the west side of the pavement there was a shoulder 17 feet wide which widened at an entrance to the residential property of Ratleys. A wide, open shoulder extended the length of the cemetery on the east side of the pavement.

As Mrs. Kopp's car approached the extreme northern end of the cemetery, plaintiff noticed Blain's car pull alongside them, its front end right by plaintiff. Plaintiff immediately glanced at Mrs. Kopp who had her head turned toward Mrs. Sigman, and was saying something to her—talking to Mrs. Sigman. Plaintiff immediately glanced ahead at the highway, and saw a northbound car (Schramm) coming toward them at a speed between 45 and 50 miles per hour. Blain was in the left (northbound) lane going southward and attempting to pass Mrs. Kopp's car. A distance of 360 feet (on cross-examination plaintiff testified 375 to 400 feet) then separated Blain and Schramm. Schramm did not swerve to the right or slow down, but continued coming north in the northbound lane. Blain then started to pull in front of Mrs. Kopp's car (Schramm being then 300 feet away), and as he did so he "sort of" brushed or tapped it, and plaintiff said, "Oh, Carrie, watch it." As Blain continued to turn into the southbound lane in front of Mrs. Kopp, her front left fender hit him about the middle of the back door. Blain continued, and Schramm, who was then turning to his right, was struck by Blain, the left fenders of the cars coming together, and just as they did, Mrs. Kopp's car struck Blain's car

in the rear—"it wasn't a hard bump"—for the third impact between them.

As soon as Mrs. Kopp bumped Blain in the back (the third impact) he speeded up, followed the highway down quite a distance and stopped. Mrs. Kopp, after the last impact, screamed and threw up her hands. Instead of following the curving highway she picked up speed (her statement to witness Parker later at the scene was: "I evidently hit the gas instead of the brake and shot up over this bank."), went straight on the west shoulder for about 100 feet, crossed Ratley's driveway, went up an embankment for 24 feet, broke a telephone pole guy wire, went through a shrubbery bush, and crashed head on into a huge tree in Ratley's lawn.

Mrs. Sigman testified that as they were driving along all of them were talking, and she was reading a letter from her son to both of them. She heard plaintiff say, "Oh, Carrie" or "Look out, Carrie" at a time when Mrs. Kopp was looking at Mrs. Sigman, and when Blain was coming up alongside the Kopp car. At the time Mrs. Kopp hit Blain (the second time) as he came around the front left of Mrs. Kopp's car, Schramm was still in the northbound lane 100 to 150 feet away. At the time of the impact between Blain and Schramm, the latter was partially on and partially off the pavement, and had not prior thereto swerved to the right or left or slackened his speed.

Mrs. Kopp (who married Huff after the time of the collisions and before trial) testified she saw Blain as he came from behind, around her, at which time Schramm's car was approaching from the south. As she saw Blain starting around her she tried to pull over, to swerve to the right (and managed to swerve a foot or so to the right), but he hit her and knocked her on out of the road. Blain hit Schramm also just before he hit Mrs. Kopp with his right front fender (one time only) on her left front door. Mrs. Kopp's car left the road immediately and went up the embankment. She was unable to get it under control after that. She denied that she ever threw her hands up in the air, and testified that her hands never left the wheel. She denied that as she was proceeding south on the highway and just before Blain started around she turned her attention from the road and looked toward where Mrs. Sigman was sitting. She did not remember whether Mrs. Sigman was reading a letter to her as she was driving down the highway, or that Mrs. Sigman was talking about photographs of her son or son's children. She denied also that she told Parker she had put her foot on the accelerator and not on the brake—she did not remember Parker being there. On cross-examination Mrs. Kopp testified that her automobile was in good condition, with good brakes, good steering apparatus, and that it responded easily and readily to her brakes and gas acceleration, and that she did put on her brakes as soon as her car started to leave the road.

With respect to Schramm, Mrs. Kopp testified that just his rear fender was on the highway when Blain struck it, and then struck her. She heard the other collision take place before Blain hit her car. Blain was in the northbound lane (he never did pull in front of Mrs. Kopp so that she hit him in the rear of his car). She first saw the Schramm car when it was right at the top of the hill (to her south), but she did not keep watching it—she was watching the the one which was passing her. After the Schramm car came over the hill she saw it next about the time they were hit. Mrs. Arthur Smith testified that she was riding in an automobile being driven by her daughter, Alice Trokey, following Mrs. Kopp when Blain passed them. At the time Blain started to pass Mrs. Kopp she saw the Schramm car approaching, and later saw Blain hit Mrs. Kopp's car (once) which was immediately knocked into the yard and into the tree. Immediately after the Blain car got into the left lane the Schramm car

started off toward the shoulder, its left rear (fins) being involved in the collision with Blain. Mrs. Trokey testified that when Blain got about half way around Mrs. Kopp's car the Schramm car had already started trying (gradually) to pull off the highway, and had pulled completely off except for the left back fin which was out on the highway, within three or four seconds after she first saw him.

Plaintiff submitted her case against Mrs. Kopp on the theory that Blain turned his automobile back into her lane and that she permitted the left front of her automobile to strike Blain's rear, and thereafter she failed to follow the curve of the highway and went straight into a tree, and in thus operating her automobile she failed to exercise the highest degree of care. Against defendant Manley, plaintiff's theory was that Schramm negligently failed to reduce his speed or to swerve his car to the shoulder, but forced the Blain car to turn sharply and abruptly into the southbound lane in front of Mrs. Kopp.

Instruction No. 6, upon the subject of plaintiff's contributory negligence of which she complains, submitted that when plaintiff first observed the Blain car starting to pass Mrs. Kopp's car, and saw the Schramm car approaching, she saw that Mrs. Kopp was conversing with Mrs. Sigman and was unaware of the presence and position of the Blain car, and that plaintiff failed to promptly warn Mrs. Kopp of the presence and position of the Blain automobile, and in so failing she failed to exercise ordinary care for her own safety and was thereby negligent, plaintiff could not recover, and the verdict must be in favor of Mrs. Kopp and against plaintiff.

■ As to the instruction barring plaintiff's claim against Mrs. Kopp because of the submitted finding that she failed promptly to warn Mrs. Kopp of the presence of the Blain automobile, plaintiff says that it was error to give it without suffi-

cient evidence to support same. In this we agree. The evidence shows that as the Blain car started to pull in front of Mrs. Kopp's car, plaintiff *did* warn Mrs. Kopp. The burden of proof as to the promptness of the warning (i. e., the sufficiency of the warning) as the basic fact of the contributory negligence was, and as in any other case, upon Mrs. Kopp, unless the plaintiff's evidence shows contributory negligence as a matter of law. Parsons v. Noel, Mo., 271 S.W.2d 543, 544 [1–3]; Alexopoulos v. Simmons, Mo., 371 S.W.2d 229, 231 [2]. Mrs. Kopp here argues that during the interval of time from the point at which plaintiff first saw Blain until Blain started to pull in front of them, there was ample opportunity for plaintiff to have warned Mrs. Kopp before she did, and thus to have influenced the situation for safety. Now the evidence shows that the first time plaintiff saw Blain he was pulling alongside them. She next saw Mrs. Kopp with her head turned toward Mrs. Sigman, immediately upon which she looked ahead and saw Schramm 360 feet ahead coming at a speed of 45 to 50 miles per hour. Mrs. Kopp was driving 35 to 40 miles per hour. It was then that Blain started to pull in front of Mrs. Kopp and plaintiff gave her warning. There was no evidence of the length of time between when plaintiff first saw Blain and when she actually gave the warning. The jury could have found from the distances between the automobiles and their relative speeds that only 2½ to 3 seconds elapsed before the collisions. There was no evidence that plaintiff could have given a warning sooner than she did, or if so that such sooner warning would have been effective to prevent the collision. Compare Corn v. Kansas City, C. C. & St. J. Ry. Co., Mo., 228 S.W. 78, 82 [3]. In Ward v. Missouri Pac. Ry. Co., 311 Mo. 92, 277 S.W. 908, 911 [7], a railway crossing case, the court said, "The timely warning of an approaching train is a warning in time for one who is warned to avoid being hit," and thus here there was a necessity that defendant show sufficient facts and circumstances, beyond speculation

and conjecture, that plaintiff could have given a "more prompt" and effective warning to Mrs. Kopp. See Sandoz v. Beridon, La.App., 150 So. 25, 29, where plaintiff guest exclaimed immediately to her host, upon seeing defendant, who was driving a forward car, "Look, he is turning in," and the court held that although it was the duty of a guest, when aware of impending dangers unknown to his host, to warn the latter at once (as is the duty in Missouri, see Toburen v. Carter, Mo., 273 S.W.2d 161; Wilson v. Cade, Mo.App., 375 S.W.2d 577), it did not appear that plaintiff had failed to do anything that he should have done, or that he could have warned his host sooner than he did. Instructions to the jury must be supported by the evidence, Hough v. Rapidair, Inc., Mo., 298 S.W.2d 378, 386; Carlisle v. Tilghmon, Mo., 159 S.W.2d 663, 665, and it was error, for that reason alone, for the court to give Instruction No. 6.

■ There is another reason why the giving of Instruction No. 6 was error. That is that defendant testified that she saw Blain as he came from behind, around her, at which time Schramm's car was approaching from the south. She denied that she turned her attention from the road and looked toward where Mrs. Sigman was sitting. An occupant of a motor vehicle, here plaintiff Mrs. Moore, is not required to warn the driver of what the latter already knows and appreciates. 61 C.J.S. Motor Vehicles § 488a, p. 104. The reason is obvious: a warning of imminent danger would add nothing to what the driver already knows so as to influence the situation of safety, and the following cases so hold: Rosenstein v. Lewis Automobile Co., Mo. App., 34 S.W.2d 1023, 1026 [4]; Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 965 [5]; Cheatham v. Chartrau, 237 Mo.App. 793, 176 S.W.2d 865, 869 [4]; and Fann v. Farmer, Mo.App., 289 S.W.2d 144, 149 [10, 11].

■ Mrs. Kopp argues further that even had there been no evidence to support the submission of contributory negligence, such failure is cured by plaintiff's own submission (i. e., in her verdict-directing Instruction No. 1 concluding, "unless you find plaintiff guilty of contributory negligence as submitted in Instruction # 6."). In view of recent cases upon the subject of invited error such as here contended, Mrs. Kopp's argument is without merit. In the case of Myers v. Buchanan, Banc, Mo., 333 S.W. 2d 18, 23 et seq., the court discussed the case of Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756, where there was a tail instruction similar to the one here referring to contributory negligence, and the proposition of invited error was thoroughly explored. In view of the case of Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, 22 [6], requiring reference in plaintiff's verdict-directing instruction to a submitted contributory negligence instruction, which reference amounts to a compulsion of plaintiff to do so, the court in the Myers case held that the plaintiff was forced to take a position disadvantageous to him; he did not voluntarily adopt defendant's theory of contributory negligence or the manner of submitting it; and he did not invite error and could not be held to have waived his objections or be estopped to complain of the instructions. The Ferguson case was overruled in its conflict with the views expressed in the Myers case, and Mrs. Kopp's cited case, Stephens v. St. Louis Public Service Company, Mo., 276 S.W.2d 138, 141 [1], not referred to in the Myers case, but following the same rule as in the Ferguson case, should likewise no longer be followed. See also Shaffer v. Sunray Mid-Continent Oil Company, Mo., 336 S.W.2d 102, 108 [9, 10]; Pasternak v. Mashak, Mo.App., 392 S.W.2d 631, 639 [12].

We shall now take up the points of error contended by plaintiff as to defendant Manley. Plaintiff says that the following argument of defendant Manley's counsel was prejudicially erroneous so as to entitle her to a new trial:

"When you tell this lady she can't recover against Mrs. Kopp and against

Mr. Manley you're not telling her she doesn't have a right to be paid or to get a judgment against somebody for her injuries, you're telling her you sued the wrong people, that's what you're telling her. And that's exactly what she's done. She ought to seek out this man that caused this thing and let him pay for it. Now, I don't know whether she has or not. Maybe she's received some payment from him, we don't know—

"BY MR. McILRATH: If the Court please, that's highly improper and he knows it.

"BY MR. McCLINTOCK: Well, I don't know any such—

"BY MR. DERRICK: If the Court please, we want to move for a mistrial because of that prejudicial remark. I don't think that's—

"BY THE COURT: Let's—

"BY MR. McILRATH: He's clear out of the record.

"BY THE COURT: Let's limit the argument to the facts in evidence, gentlemen. The request for—

"BY MR. McILRATH: He's clear out of the record, if the Court please, and he knows the whole set up.

"BY THE COURT: Well, let's proceed, gentlemen. The objection is overruled."

■ Although counsel are allowed a wide latitude in argument, they should stay within the evidence and reasonable inferences which may be deduced therefrom. Harp v. Illinois Central Railroad Company, Mo., 370 S.W.2d 387; Eickmann v. St. Louis Public Service Company, Mo., 323 S.W.2d 802; Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355. The portion of the argument quoted above dealt principally with the defense of the sole cause of the plaintiff's injuries being the acts of Blain, to which, under the evidence and in conjunction with the testimony of Mrs. Kopp, Mrs. Smith and Mrs. Trokey tending to show Mrs. Kopp and Schramm not negligent, both defendants were entitled. The portion of the argument dealing with a settlement with Blain was unsupported by the evidence and was improper. However, plaintiff requested only the drastic relief of a mistrial when the matter could have been removed by a request that the court instruct the jury to disregard the same, which was not done. Furthermore, the court cautioned counsel to limit the argument to the evidence. In view of the lack of a proper request by counsel that the jury be instructed to disregard the matter, we rule that the erroneous single statement of counsel with respect to a possible settlement with Blain does not require a reversal and a new trial as to defendant Manley. Compare Olsten v. Susman, Mo., 391 S.W.2d 328, 330 [3–6], and cases there cited. Plaintiff's point raising this issue is overruled.

■ Plaintiff next complains that the court erred in giving sole cause instruction No. 5, which submitted the negligent acts of Blain in attempting to pass Mrs. Kopp at a time when Schramm was approaching so closely as to constitute an immediate hazard of collision. As to defendant Manley, there was no issue of contributory negligence of plaintiff—Manley did not participate in the giving of Instruction No. 6, and the instructions as between Manley and plaintiff in no way refer to any negligence of plaintiff. Therefore, there could be no contradiction, inconsistency or self-destructiveness between Instructions Nos. 5 and 6 concerning plaintiff's claim against Manley and his sole cause defense thereto. The further contention as to Instruction No. 5 is that it failed to hypothesize sufficient facts to demonstrate a sole cause situation. First, it is said, there are not sufficient facts (hypothesized) from which the jury could find that Schramm could have avoided the collision and that he exercised the highest degree of care in the operation of his car prior to the collision with Blain. Suffice

it to say that plaintiff's verdict-directing instruction against Schramm's executor required the jury to find that Schramm failed to exercise the highest degree of care, and Instruction No. 5 required the jury to find that Schramm was not guilty of any negligence as submitted in other instructions. Second, it is said that the instruction did not hypothesize sufficient facts to demonstrate a causal connection between Blain's negligence and plaintiff's injuries—that there is nothing said about her duty to exercise the highest degree of care in the operation of her car after the collision with Blain's car. The argument is without merit. Instruction No. 5 absolves defendant Manley from liability if the jury find Blain's negligence as submitted, and that *Schramm* was not negligent. It does not foreclose a recovery from Mrs. Kopp if the jury find her to be negligent in the operation of her automobile, as submitted in plaintiff's separate verdict-directing instruction against Mrs. Kopp. In its essential hypotheses Instruction No. 5 is sufficient under the cases of Happy v. Blanton, Mo., 303 S.W.2d 633, 639 [11, 12]; Lynn v. Kern, Mo., 323 S.W.2d 726, 728 [1], and other cases there cited. There was no error in the giving of Instruction No. 5 as to defendant Manley, and plaintiff's point on this issue is overruled.

 Plaintiff says that the court erred in permitting Mrs. Kopp to read parts of her testimony given at a previous trial (see Sigman v. Kopp et al., Mo., 378 S.W.2d 544, decided by Division No. 1 of this Court) without having laid a proper foundation therefor. The point is without merit because, as the record reveals, plaintiff, when asked about her former testimony upon cross-examination, gave equivocal and indecisive answers with respect thereto. It was therefore proper for counsel to cause to be read her exact former testimony for impeachment purposes as was done, and no error was committed.

As to defendant Mrs. Kopp, we determine that the erroneously given instruction No. 6 as to plaintiff's contributory negligence entitles plaintiff to a new trial. Inasmuch as the new trial will be governed by the Missouri Approved Instructions we need not consider whether Instruction No. 4 on the subject of sole cause was properly given. MAI No. 1.03 provides that "No instruction shall be given on behalf of the defendant which hypothesizes that the conduct of one other than defendant was the sole cause of the occurrence," and on retrial that rule will be followed.

The judgment is affirmed as to defendant Manley, and as to defendant Mrs. Kopp the judgment is reversed and the case is remanded for new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.