Cinda Gale KNOWLES, by her mother and
next friend, Juanita Cheatum,
Respondent,

v.

M. F. GOSWICK and Gean Manford
Clanton, Appellants.

No. 55859.

Supreme Court of Missouri,
Division No. 2.

Feb. 22, 1972.

Phillips, Rice & McElligott, John J. Phillips, Independence, for respondent.

Buehner & Thomas, L. R. Buehner, Joplin, for appellants.

JACK P. PRITCHARD, Special Judge.

For personal injuries, respondent received a verdict and judgment against appel-

lants for $45,000.00. The points asserted for claimed reversal of the judgment are limited to (1) alleged misconduct of a prospective juror in failing to reveal a previous claim for injuries on voir dire examination; (2) failure of the court to declare a mistrial for alleged improper argument of counsel in arguing the amount of damages; and (3) the court's giving of Instructions Nos. 3 and 4 on the same sheet of paper, allegedly overemphasizing the meaning of the term "highest degree of care."

On voir dire examination appellants' counsel asked, "Has any member of this panel ever been injured in an automobile accident of any kind?" and "Have any of you or has any member of the panel been *seriously injured* before?" (Italics supplied.) Prospective juror Leota Ferguson answered that she had been in a minor car accident and had suffered a fall in a store, the claim for which had been settled. Leota stated that these matters would not prejudice her for or against either party. Further questions were asked, "Has anybody ever brought a lawsuit for personal injuries received in a fall downstairs or in an automobile accident or however? Nobody here ever been a plaintiff or brought a lawsuit? Have any of you made a claim as a result of such casualty, falling downstairs or slipping and falling, being in an automobile and getting into an accident?" Leota further answered that she received a whiplash injury when a car drove in front of her, and that the case had been settled with an insurance company. Prospective juror Anderson stated that he had a claim concerning a young boy running into the side of his car at which time he had collision insurance.

Prospective juror Gladys Alford made no response to any of counsel's voir dire examination above. On motion for new trial it was developed that Gladys had been involved in an automobile accident on October 30, 1965. She did not remember counsel for respondent asking if any member of the panel had been injured in an au-

tomobile accident of any kind. She had some hearing difficulty, but not any particular problem with it. She was seventy years of age at the time of the motion for new trial, at which time she testified that had she heard the question put to the panel she would have answered "No." "Q. Mrs. Alford, have you been injured in an automobile accident? A. Well, I can't really say that I have. I have never been injured in an automobile accident. May I go ahead and—MR. BUEHNER: Yes, ma'am. A. (Continuing) If you are talking about the Creacy accident, it was a very, very minor accident which didn't—I didn't recall it whatsoever. Q. You had no recollection of it? A. No, I didn't recall it because it was such a minor deal. * * * Q. Tell us what injuries you got as a result of that accident. A. I didn't get any. Q. Pardon? A. I didn't get any. Q. Did you see a doctor after that accident? A. No, sir." Gladys went across the road to call the State Patrol when this accident happened. She was examined by a doctor at the hospital only because Mrs. Creacy insisted, and she did see a doctor several times in a month on the claim agent's suggestion when she told him she had a pain in the lower side when she drew a long breath. Gladys and her husband signed a release and received $260.00 thereunder for "all claims known and unknown." In further explanation, Gladys testified, "I received this injury you were talking about, about the Creacy's, but this never entered my mind being my own. I just thought that it wasn't me that you were trying. I thought it was the other party. It wouldn't have registered." The matter of her claim and receiving money as a result of the accident did not come to her mind at any time during her deliberations, and not until one of respondent's attorneys asked her about it about three weeks before the hearing on the motion for new trial. The verdict of the jury was signed by eleven persons, including Gladys Alford.

It is the function of the trial court, in an exercise of discretion reason-

ably supported by the record, to determine whether a prospective juror's failure to answer questions relative to prior involvement in an accident was an intentional concealment of such information, thus enabling such person to participate in and influence a verdict to the prejudice of the opposite party. Logsdon v. Duncan, Mo., 293 S.W.2d 944, 947; Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278, 281 [3]. And see the basic considerations and determining rules on such question in Beggs v. Universal C. I. T. Credit Corporation, Mo., 387 S.W.2d 499, 503 [2–8], as summarized in Rinkenbaugh v. Chicago, Rock Island & Pacific R. Co., Mo., 446 S.W.2d 623, 626 [1–5].. It is true, as stated in the Logsdon case, and others, that the consideration is different as to whether the trial court refused or granted a new trial, but the basic inquiry is still whether the trial court's exercise of discretion is reasonably supported by the record. Here, Mrs. Alford's answers to questions that she did not recollect at all her own minor experience, that it never entered her mind, are sufficient for the trial court to find, as it did, "The Court had the opportunity to observe Mrs. Alford's demeanor at trial and at this hearing, under vigorous examination and finds that her failure to divulge a 1965 accident in which she was involved and the attendant settlement was not intentional or willful; that the matter did not influence her judgment in this case and that no prejudice resulted to defendants as a result of her failure to disclose the circumstances of this prior accident and claim upon voir dire questioning." Compare, on similar circumstances, the cases where the refusal to grant a new trial for alleged misconduct of jurors in failing to answer voir dire questions was affirmed: Akers v. St. Louis Public Service Company, Mo., 370 S.W.2d 347, 353[5, 6] et seq.; Mantz v. Southwest Freight Lines, Mo., 377 S.W. 2d 414, 418; and Dawson v. Butts, Mo., 434 S.W.2d 547, 549. Further citation of the many cases on the subject is unnecessary.

■ Appellants say that there was improper argument of respondent, for which a mistrial was requested and denied, inviting the jury to consider loss of wages for the balance of the anticipated life span of respondent when such argument was not supported by the evidence.

After the collision respondent was given emergency treatment at a Neosho, Missouri, hospital. She was then taken to St. Edward's Hospital in Fort Smith, Arkansas, where she remained for about two months undergoing treatment and surgery. Her injuries received in the collision, besides bruises, cuts and abrasions, were that an area of flesh the size of a man's hand was torn from her right leg and foot, exposing the bone and tendons; a toe was torn from the foot; and her right collarbone was fractured. Gangrene was detected and respondent underwent surgery in an attempt to save her foot, and three skin grafts from her left buttock and thigh were done. Surgery was not successful in Fort Smith and two more were required in Kansas City in 1967, with another flesh or skin graft. Up to the trial, surgery was still not successful, and the doctors testified that further surgery would be necessary to correct the right foot and ankle. There was medical testimony that there was a restriction of motion and a limp which would be permanent even after further surgery. The collarbone fracture did not mend, an operation was performed and pins were placed in the bone to stimulate its formation, but the surgery was unsuccessful. Medical recommendation was that the ends of the collarbone be removed to reduce pain and disability, the result of which would be a change in the posture of the shoulder which would drop. Respondent, eighteen years of age at the time of the collision, was in previous good health, had an employment history, and after the collision she tried to work again at a T. G. & Y. store where she averaged $20.00 per week take-home pay, but she was unable to work standing because of swelling in her right foot and ankle which became un-

bearably painful. Three mortality tables were admitted into evidence showing respondent had a life expectancy of 54.91, 41.93 and 47.64 years.

The argument complained of is this:

"MR. RICE: Please evaluate these things, her loss of earnings, if she lives another 50 years, at $20 a week that is—

MR. BUEHNER: This is under per diem and unsupported by any evidence. We move that the jury be discharged and a mistrial be declared for this prejudicial statement.

THE COURT: Your request will be denied. The jury is instructed to disregard any statement made by plaintiff's attorney as to any value per day.

MR. BUEHNER: After your instruction then, to make the record clear, I would again renew my request that the jury be discharged and a mistrial declared.

THE COURT: It will be refused.

MR. RICE: There is still more surgery and hospital then and more day-to-day, tedious pain, more plastic surgery, and you will recall how Dr. Dabbs and Dr. Clemmons described the veins and flesh and exposed tendons and after about seven attempts with doctors that was the best job they could accomplish. This was not a simple injury and these are not fictitious injuries. They are real and they are serious, and each one of them shows. If you are going to be inclined to go to fractions or cut it here and there, let's evaluate each skin graft and each scar and each operation and—

MR. BUEHNER: We object. There is no evidence regarding the value of those individual items. We object to it.

THE COURT: Your objection is sustained.

MR. RICE: And the horror of the last three-and-a-half years. Cindy has been unable to hold down a job, can only work short hours, short money. It isn't worth the pain and suffering she has to go through to do it. You can compensate her for the loss of earnings the rest of her life, and she testified she was able to net $20 a week.

THE COURT: You have used your time."

It is apparent that the jury could find under the evidence that respondent did in fact suffer permanent injuries which would impair her ability to work and earn in the future, as a part of her damages awardable. Respondent testified that she needed to work to help pay her medical bills, but was not working because her foot would swell. She was not qualified for sitting down work. She had to quit her T. G. & Y. work because of pain and suffering. There was definite testimony that her injuries were permanent in nature, but that evidence did not stand alone as above indicated so as to make applicable the rule of Moss v. Mindlin's Incorporated, Mo., 301 S.W.2d 761, 769, to the effect that impairment of earning capacity is not to be inferred merely from the presence of a permanent injury. The nature of these injuries together with respondent's testimony that she had to quit her work because of the injuries is sufficient to support the finding that they interfered with her working capacity and impaired her earning power. See Adams v. Atchison, Topeka & Santa Fe Railway Co., Mo., 280 S.W.2d 84, 93 [13]; Newman v. St. Louis-San Francisco Railway Company, Mo., 369 S.W.2d 583, 590 [6]; and McDonald v. Missouri-Kansas-Texas Railroad Co., Mo., 401 S.W.2d 465, 471 [9, 10]. The Newman case pointed out that in the case of an infant (as contrasted to that of an adult), whose earning capacity is wholly untried, the question as to damage for the loss of future earning capacity is necessarily to be left to the sound judgment, ex-

perience, and conscience of the jury. There is no basis for error in the court's refusal to grant a mistrial, a drastic remedy, for the assigned reasons.

■ Instruction No. 3 given by the court is: "The term 'negligence' as used in these instructions means the failure to use the highest degree of care which means that degree of care that a very careful and prudent person would use under the same or similar circumstances." Instruction No. 4 is: "The term 'highest degree of care' as used in these instructions means that degree of care that a very careful and prudent person would use under the same or similar circumstances." Appellants claim error in the giving of both instructions on the ground that the meaning of the term "highest degree of care" was overemphasized in definition. There is no departure from prescribed MAI forms which was condemned in Brown v. St. Louis Public Service Company, Mo., 421 S.W.2d 255, and Murphy v. Land, Mo., 420 S.W.2d 505. Both instructions have as their source MAI Nos. 11.03 and 11.01. The instructions, however, do repetitively define the term "highest degree of care," and it would have been better to have given but one of them. No prejudicial error as would require reversal is present. There was no misdirection, and the correct language of the instructions did not in fact confuse and mislead the jury. "'[R]epetitious instructions will not constitute reversible error unless it plainly appears that they were in fact calculated to confuse or mislead.'" Dudeck v. Ellis, Mo., 399 S.W.2d 80, 94.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by JACK P. PRITCHARD, Special Judge, is adopted as the opinion of the Court.

All of the Judges concur.