**M & A ELECTRIC POWER COOPERA-TIVE, a corporation, Plaintiff-Appellant,**

v.

**Chester TRUE et al., Defendants-Respondents.**

**No. 9101.**

Missouri Court of Appeals, Springfield District.

April 27, 1972.

Dalton, Treasure & Bullard, James C. Bullard, Kennett, for plaintiff-appellant.

Ford, Ford & Crow, Kennett, for defendants-respondents.

STONE, Judge.

In this proceeding, M & A Electric Cooperative (Cooperative) has condemned a perpetual easement for a right-of-way, 110 feet in width, across certain described tracts in Dunklin County, Missouri, including two noncontiguous farms owned by Chester True and Martha Virginia True, his wife, for the construction and maintenance of high voltage electric transmission lines. One of the True farms was an 80-acre tract referred to as Tract 17, the other a 40-acre tract referred to as Tract 18. In accordance with our statutory procedure [Chapter 523, RSMo 1969, V.A.M.S.], commissioners were appointed who assessed damages of $5,720 for the right-of-way easement across Tract 17 and $345 for such easement across Tract 18. The issues raised by subsequent exceptions of the Cooperative and of defendants True as to each tract were, by agreement of the parties, consolidated for trial by jury in the circuit court with a separate verdict to be returned as to each tract. From the judgment entered upon such verdicts assessing damages of $8,000 as to Tract 17 and $500 as to Tract 18, the Cooperative appeals.

The Cooperative's 110-foot right-of-way easement runs diagonally across Tract 17 and subjects approximately 5.2 acres to that servitude; and the Cooperative's 161M-volt overhead transmission lines are carried across that tract on two dual-pole structures, in each of which two 75-foot poles are set approximately 15 feet apart, and a third dual-pole structure in which two 80-foot poles are similarly set, with a minimum above-ground line clearance of 28 to 29 feet between structures. There is one dual-pole structure in a corner of Tract 18 and about .26 acre is subject to the Cooperative's easement.

With the exception of "the farm site" where the dwelling and outbuildings were located, *Tract 17* was devoted principally to cotton. As one witness described it "that is good land" which always has had "a very rank crop on it . . . very tall matted cotton." Six witnesses for *defendants True* offered opinions (a) as to the fair market value of 80-acre Tract 17 prior to the taking of the right-of-way easement which ranged from $46,000 to $40,000, (b) as to the fair market value of that tract after the taking which ranged from $35,000 to $30,000, and (c) as to the resulting damage which ranged from $12,000 by two witnesses and $10,000 by another to a low figure of $8,000 by three witnesses. In explanation and support of their opinions concerning resulting damage, witnesses for defendants True mentioned several elements, including allegedly severe hindrance in and limitation of aerial spraying of crops upon 25 to 30 acres by reason of the transmission lines angling across that portion of Tract 17, the inconvenience and difficulty of using modern farming equipment such as a six-row cultivator near the dual-pole structures, the necessity of and the labor and expense incident to controlling Bermuda or Johnson grass and weeds in the uncultivated areas around those structures, and the "ugliness" and "unsightliness" of the angling trans-

mission lines and the structures.[1] Four witnesses for the *Cooperative* offered opinions (a) as to the fair market value of Tract 17 prior to the taking which ranged from $40,000 to $32,000, (b) as to the fair market value of that tract after the taking which ranged from $38,800 to $31,100, and (c) as to the resulting damage which ranged from $1,200 by one witness and $1,050 by another to a low figure of $900 by two witnesses.

With respect to 40-acre *Tract 18*, the six witnesses for *defendants True* offered opinions (a) as to the fair market value of that tract prior to the taking which ranged from $21,000 to $19,000, (b) as to the fair market value of the same tract after the taking which ranged from $19,600 to $17,800, and (c) as to the resulting damage which ranged from $1,400 by one witness, $1,200 by another, and $1,000 by two witnesses to a single low figure of $500. The four witnesses for the *Cooperative* offered opinions (a) as to the fair market value of Tract 18 prior to the taking which ranged from $20,000 to $16,000, (b) as to the fair market value of that tract after the taking which ranged from $19,800 to $15,900, and (c) as to the resulting damage which ranged from $225 by one witness and $200 by another to a low figure of $100 by two witnesses.

Appellant Cooperative's first point is that "the trial court erred in not declaring a mistrial at plaintiff's request when defendants' counsel injected 'financial condition' and made other prejudicial erroneous, inflammatory statements before the jury during his voir dire examination." The statement of which the Cooperative complains was that: "The other parties involved in this lawsuit are the Production Credit Association and John Hancock Mutual Life Insurance Company, who have deeds of trust against the property here involved, and also named as defendants, who are not present in court today." No other portion of the voir dire examination is preserved in the transcript. However, it is shown affirmatively that other segments of the voir dire both preceded and followed the quoted statement, and that the *"voir dire* [*was*] *concluded without objection*," after which certain "proceedings" were had out of the hearing of the jury panel, in the course of which the Cooperative's legists reverted in this wise to the above-quoted statement by opposing counsel: "At this time, out of the hearing of the jury, plaintiff objects to that statement to this entire panel, and moves for a mistrial . . . . This was a deliberate attempt to place financial conditions before this jury by reciting about a deed of trust, et cetera." (All emphasis herein is ours.)

■ It would appear that, since no objection or motion for a mistrial was interposed when the statement of which the Cooperative now complains was made, the subsequent motion at the close of the voir dire examination was not timely and thus no reversible error could be predicated upon the denial of that motion.[2] Nevertheless, we have, ex gratia, considered this point on its merits.

The argument of Cooperative's counsel rests on these facts, to wit, (a) that prior to trial on October 15, 1970, i. e., on January 27, 1970, defendant John Hancock Life Insurance Company (John Hancock), the cestui que trust in a deed of trust executed by defendants True on February 10, 1967, by which they conveyed *Tract 18* to defendant Hugh G. Duncan, as trustee, had

---

1. As to the propriety of consideration of the last-mentioned element, see Missouri Public Service Co. v. Garrison, Mo.App., 454 S.W.2d 628, 630(1); KAMO Electric Cooperative, Inc. v. Cushard, Mo. App., 416 S.W.2d 646, 654 (5, 6, 8).

2. Cf. Blanford v. St. Louis Public Service Co., Mo., 266 S.W.2d 718, 721(1); Fennell v. Illinois Central R. Co., Mo.App., 383 S.W.2d 301, 307(6); Shields v. American Car & Foundry Co., Mo.App., 293 S.W. 77, 78(2); Yates v. House Wrecking Co., Mo.App., 195 S.W. 549, 551(6).

filed in this cause its written "Disclaimer" of "any interest in any award in the condemnation proceedings" but in which it declared that this "shall not affect the priority, validity or enforceability" of the aforesaid deed of trust, and (b) that trustee Duncan had filed a similar "Disclaimer" on February 17, 1970. On these record facts, counsel assert that "John Hancock no longer retained its status as a 'party' in this proceeding" and that reference by the Trues' attorney "to the deed of trust could have no other purpose except to inject the financial condition of [the Trues] before the jury."

■ "A party to an action is a person whose name is designated on the record as plaintiff or defendant" and those named as defendants remain parties, even though not served with process. Downey v. United Weatherproofing, Mo., 241 S.W.2d 1007(1, 2); Cooper v. Barr, Mo., 413 S.W.2d 219, 221. See Soeding v. Bartlett, 35 Mo. 90, 94. "Parties may be dropped or added *by order of the court* on motion of any party or of its own initiative at any stage of the action and on such terms as are just." V. A.M.R. Rule 52.06(a). In the absence of an order of court discharging or dropping them as parties defendant, John Hancock and Duncan remained such parties at the time of trial. In fact, the Cooperative so recognized when on September 24, 1970 (long after the filing of the disclaimers in January and February 1970 and less than one month prior to trial), it filed and served pursuant to V.A.M.R. Rule 77.25 offers of judgment as to Tracts 17 and 18 in which it offered to allow judgment to be taken against it and in favor of all parties defendant named in the original petition in condemnation (including John Hancock and Duncan), who were again specifically named in those offers of judgment.

■ We are in hearty agreement with the salutary rule that argument or evidence as to the financial status of the parties is as improper in eminent domain proceedings [State ex rel. State Highway Commission v. Turk, Mo., 366 S.W.2d 420, 423(6); annotation 21 A.L.R.3d 936] as in other categories of cases. Green v. Ralston Purina Co., Mo., 376 S.W.2d 119, 127 (8–10); Hendrick v. Kauffman, Mo.App., 66 S.W. 2d 985, 988(4). And we agree with the Cooperative's counsel that it would be no less improper to inject the relative financial status of the parties into the voir dire examination. However, control and extent of the voir dire examination necessarily rest in the sound judicial discretion of the trial judge, who is in a superior position to determine whether the proper limits of such examination have been transcended by counsel and, if so, the likely result thereof. Krudwig v. Fowler, Mo., 394 S.W.2d 290, 292(3, 4); Olsten v. Susman, Mo., 391 S. W.2d 331, 335(6). An appellate court will interfere only upon demonstration of manifest abuse of that discretion and probability of injury to complainant. Brown v. Bryan, Mo., 419 S.W.2d 62, 64–65(1); Bunch v. Crader, Mo.App., 369 S.W.2d 768, 771(4) and cases collected in note 4.

■ The hereinbefore-quoted statement by counsel for defendants True during voir dire examination was both factually and legally correct. And, in this inflationary era of easy money and even easier credit which has produced a veritable deluge of security agreements and deeds of trust blanketing the vast majority of tangible property, both personal and real, we think it highly improbable that the mere incidental mention of the fact that Production Credit Association and John Hancock "have deeds of trust against the property here involved," without disclosure of the original principal sum or the unpaid balance of the loan secured by either deed of trust, would have inflamed or prejudiced the jury against the Cooperative. Cf. Southwestern Bell Telephone Co. v. Jennemann, Mo.App., 407 S.W.2d 85, 91(8). If counsel's statement was superfluous and improper, as may be granted *arguendo,* the *only* relief requested by the Cooperative (and that tardily), i. e., the drastic remedy of declaring a mistrial and discharging the

jury, would not necessarily have been required. Moore v. Kopp, Mo., 400 S.W.2d 176, 182(8); City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839, 852(30). With the court suggesting that a request for a cautionary instruction would be entertained, Cooperative's counsel nevertheless stood on their delayed motion for a mistrial. Mindful also that Cooperative's complaint was again considered by the trial judge and, in the exercise of his judicial discretion, again disallowed when the motion for new trial was overruled, we are constrained to defer to that determination [cf. Reynolds v. Arnold, Mo., 443 S.W.2d 793, 800; Olsten v. Susman, supra, 391 S.W.2d at 335] and perceive no basis for a contrary holding here. Moore v. Kopp, supra, 400 S. W.2d at 182(8); Krudwig v. Fowler, supra, 394 S.W.2d at 292(3, 4).

■ Cooperative's second point relied on is that "the trial court erred in giving two MAI 9.02 damage instructions." The quoted statement might be properly passed as presenting nothing for appellate review, since it does not constitute even colorable compliance with the plain requirements of the governing rule of civil procedure in effect when Cooperative's brief was filed, to wit, V.A.M.R. Rule 83.05(e): "The points relied on shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and *briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed . . . .*"[3] But probing for the missing "why," again ex gratia, we have turned to Cooperative's motion for new trial from which we learn that the only reason for this complaint, as it was presented to the trial court, was "because defendant was only entitled to one damage instruction."

■ Instruction 4 given at the request of defendants True read as follows: "With respect to Tract No. 17 you must award defendants such sum as you believe

was the difference between the fair market value of defendants' whole property immediately before the taking on March 9, 1970 and the value of defendants' remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken." Aside from the introductory phrase, "[w]ith respect to Tract No. 18," the language of defendants' instruction 5 was the same as that of instruction 4. And apart from the added introductory phrase of each instruction, both faithfully tracked the appropriate pattern instruction, MAI No. 9.02, the use of which is mandatory in an eminent domain proceeding to condemn a right-of-way easement. State ex rel. Kansas City Power & Light Co. v. Campbell, Mo.App., 433 S.W.2d 606, 610–611(1–3); State ex rel. Kansas City Power & Light Co. v. Parma, Mo., 467 S.W.2d 43, 48(4).

■ In considering Cooperative's complaint that defendants True were entitled to only one damage instruction, we bear in mind that Tracts 17 and 18 are noncontiguous; that each witness testified as to the fair market value of each tract before and after the taking; and that opposing counsel stipulated prior to trial "that the two tracts can be consolidated for trial, and that the jury hear all the evidence as to both Tract[s] 17 and 18, but that separate verdicts will be returned as to each tract." In these circumstances, it would seem that the giving of a MAI No. 9.02 instruction as to each tract would not be improper or prejudicial. Cf. Van Buskirk v. Missouri-Kansas-Texas R. Co., Mo., 349 S.W.2d 68, 73(11). Nothing to the contrary has been discovered in careful examination of the nine cases cited under this point in Cooperative's brief, no one of which is factually analogous or legally persuasive here. Certainly, the unanimous jury verdict as to each tract was not only responsive to and well within the range of the opinion evi-

---

3. The same requirements, although cast in different phraseology, are now found in V.A.M.R. Rule 84.04(d), which became effective January 1, 1972.

dence concerning the damage to that tract by reason of the taking but also convincingly demonstrated that the jurors were in no wise confused or misled. Since instructions 4 and 5 did not deviate from the prescribed pattern instruction, MAI No. 9.02, and did not misdirect the jury, the fact that (apart from the introductory phrase of each instruction) they were repetitive in language did not introduce reversible error into the case. Knowles v. Goswick, Mo., 476 S.W.2d 563, 567(4); Dudeck v. Ellis, Mo., 399 S.W.2d 80, 94(10). See V.A.M.R. Rule 84.13(b). The judgment nisi should not be set aside for the giving of these instructions.

Cooperative's final complaint is that "the trial court erred in not sustaining [its] motion for new trial because the jury was guilty of misconduct in arriving at a quotient verdict." At a hearing on this assignment of error in its motion for new trial, Cooperative offered a sheet of paper from the permanent circuit court file in this case on one side of which had been typewritten an instruction given to the jury and on the other side of which appeared many handwritten figures and computations, including under "17" one column of twelve amounts correctly totaled as "92500" and under "18" two columns, each of which consisted of twelve amounts correctly totaled as "5900." The unidentified calculator, undertaking to divide the total of "92500" by "12," reached and recorded an erroneous quotient of "7786" rather than the true (rounded) quotient of 7708, and similarly undertaking to divide the total of "5900" by "12" first reached and recorded an erroneous quotient of "466"

before arriving, on a second effort, at the true (rounded) quotient of 492. Of course, it might be inferred from the foregoing that, in the process of deliberation, each juror had named or suggested an amount to be awarded defendants True as damages for the right-of-way easement taken across each tract and that the average of those suggested amounts had been ascertained. But the frailty of Cooperative's position on this point is that its evidence goes no further.

It has been settled by a long and unbroken line of authority [4] that to establish a verdict as a quotient verdict it must be shown that all of the jurors had agreed in advance to accept the then unknown and unascertained quotient as their verdict; and that if, as is always presumed, there was no such prearrangement or prior agreement, the fact that, after the quotient was ascertained, it then was adopted as the verdict does not vitiate or invalidate it as such. Acknowledging the requirement that a prior agreement by all jurors to accept the unknown and unascertained quotient as their verdict is prerequisite to the finding of a quotient verdict, and recognizing that a juror will not be heard to impeach his verdict [Chrum v. St. Louis Public Service Co., Mo., 242 S.W.2d 54, 56(3, 4); State v. Stogsdill, 324 Mo. 105, 130, 23 S.W.2d 22, 31(27)], Cooperative's brief plaintively poses the percontation, "how else can a quotient verdict be proved except with an exhibit such as [Cooperative] presents?" The answer, disappointing and discouraging though it may be to counsel, is found in the blunt observation of Judge Black, a distinguished and discerning jurist of an-

4. Jones v. Midwest Pre Cote Co., Mo., 412 S.W.2d 468, 471(2, 3); Chrum v. St. Louis Public Service Co., Mo., 242 S.W. 2d 54, 56(1); Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W.2d 163, 170(12); State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 31(28, 29); Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, 977(33, 34); Scott v. Kansas City Rys. Co., Mo., 229 S.W. 178, 179(4); Montgomery v. Travelers Protective Ass'n. of America, Mo.App., 434 S.W.2d 17, 20(4, 5); KAMO Electric Co-operative v. Earnest, Mo.App., 277 S.W.2d 876, 878(1-3); Borgstede v. G. H. Wetterau & Sons Grocery Co., Mo. App., 116 S.W.2d 179, 185(6); Ownby v. Kansas City Rys. Co., Mo.App., 228 S.W. 879, 882(13); Finer v. Nichols, 175 Mo. App. 525, 157 S.W. 1023, 1028(9); Hagan v. Gibson Mining Co., 131 Mo.App. 386, 111 S.W. 608, 609(3); Kolb v. St. Louis Transit Co., 102 Mo.App. 143, 150–151, 76 S.W. 1050, 1051–1052; Fields v. Wabash R. Co., 80 Mo.App. 603, 608.

other day, that "[i]n general there is therefore no way to prove that a verdict is the result of such [a prior] agreement." Sharp v. Kansas City Cable Ry. Co., 114 Mo. 94, 106, 20 S.W. 93, 96 (1892). See also Thompson v. City of Lamar, 322 Mo. 514, 549, 17 S.W.2d 960, 976 (1929), where the quoted observation was repeated. However, our duty here is discharged by recordation of the conclusion, inescapable upon the transcript presented, that we cannot find the verdicts under scrutiny to have been quotient verdicts.

The judgment of the circuit court is, in all respects, affirmed.

TITUS, C. J., and HOGAN, J., concur.